Argued October 27, 1971, reversed and remanded
January 28, 1972

# STATE OF OREGON, *Respondent, v.*
# ANNA GREENOUGH, *Appellant.*

### 493  P2d  59

*A. I. Bernstein,* Portland, filed the briefs for appellant.

*Joseph F. Ceniceros,* Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Lee Johnson, Attorney General, and John W. Osburn, Solicitor General, Salem.

Before SCHWAB, Chief Judge, and LANGTRY and FORT, Judges.

FORT, J.

Defendant was indicted and convicted by a jury of receiving the earnings of a common prostitute in violation of ORS 167.120. She appeals from the resulting judgment.

The facts may be summarized as follows. One Beverly Williams was arrested in November or December 1970 by the police for soliciting for an immoral act. Information voluntarily and lawfully obtained from her by Deputy District Attorney Tarlow ultimately led to the prosecution of this defendant on the present charge.

Shortly after her arrest, attorney Howard Lonergan was retained by a third party to represent her in the Municipal Court of Portland on that charge. On January 22, 1971, pursuant to his own request as well as the written request of Mrs. Williams filed with the municipal Court, Mr. Lonergan was permitted to withdraw as Mrs. Williams's attorney. The state in oral argument conceded Mrs. Williams was fully cooperating with it throughout.

Defendant Greenough was charged with the current offense in the Portland Municipal Court on De-

cember 23, 1970. She retained her own counsel, Thomas W. Simmons, who thereafter appeared for her in the municipal court. Following her indictment on this charge on January 21, 1971, Mr. Simmons continued to represent Mrs. Greenough in the circuit court. Because Mrs. Williams was, at the request of the state, being held in jail as a material witness, the case without objection from the defendant was accelerated for trial.

On February 9, 1971, Mr. Simmons advised the state the defendant desired to employ Mr. Lonergan to defend her instead of Mr. Simmons. On February 10, the 78-year-old, hard-of-hearing defendant appeared before Judge Murchison and told the court in the presence of Mr. Simmons she wanted to change attorneys to Mr. Lonergan. The matter was continued for hearing before Judge Roth, the presiding judge. On February 11, Judge Roth after extended hearing allowed Mr. Lonergan to be substituted as defendant's attorney. The state resisted the substitution because Mr. Lonergan had previously represented Beverly Williams, who was the state's chief witness against the defendant, contending that there was a conflict. Attorney Lonergan filed an amended demurrer on behalf of the defendant the same day.

Following the February hearing Deputy District Attorney Gerald Doblie approached Mr. Lonergan and, according to the latter, stated that he was going to "file a complaint with the State Bar against * * * [Mr. Lonergan] for unethical conduct." Mr. Doblie testified that he merely told Mr. Lonergan " * * * that I thought that there had been opinions by the Bar concerning conflicts of interest * * * that would be similar to this matter, and that I would request * * *

that an Ethics' opinion be written by the Oregon State Bar on the particular situation." In any event, Mr. Lonergan moved to dismiss the action, or, in the alternative, to continue the case pending a ruling by the Oregon State Bar.

On February 12, 1971, after a brief hearing, Judge Roth denied defendant's motion to dismiss or for a continuance. The court ruled that although it had "absolute confidence" in Mr. Lonergan's contention that he had received no information from Mrs. Williams which could create a conflict of interest, it nevertheless would require Mr. Simmons to represent the defendant at trial:

"* * * Mr. Simmons should remain in this case and rather than at this late date with a material witness who is incarcerated, it being set over because of the situation which Mr. Doblie has created here and the Court's concerned about it, we don't want to get into a battle between you and Mr. Doblie over the situation, Mr. Lonergan."

Mr. Simmons, who was before the court at that time, stated:

"I would be reluctant to proceed as Miss [sic] Greenough's counsel for the reason that she has indicated that she is not satisfied with the way the case was handled during the time that I was handling it and has told me she does not wish me to represent her. I would feel somewhat embarrassed taking this case to trial where she has indicated she does not wish me to represent her."

The results of the hearings on February 11 and February 12, 1971, may be summarized as follows. On February 11, Mr. Lonergan, who had previously been hired by the defendant to replace Mr. Simmons, announced to the court that he had been retained by, and

intended to represent, the defendant. The court at that time recognized him as defendant's counsel. On the next day, February 12, the court on its own motion reversed itself and removed Mr. Lonergan, substituting Mr. Simmons, over his expressed reluctance, as defendant's attorney.

Trial was held before Judge Burns on February 16, 1971, and the defendant was convicted, with Mr. Simmons acting as her attorney. On April 14, 1971, a hearing was held before Judge Burns on defendant's motion for a new trial. The motion was denied.

■ The single issue of substance in this case with which we are concerned is whether the defendant was denied her right to assistance of counsel and thus of due process of law as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution, and also by Oregon Constitution, Art I, § 11.[①]

In argument the state asserts this case is one of first impression in this state, and that its peculiar fact situation distinguishes it from other cases decided elsewhere. Our own Supreme Court, in *State v. Delaney,* 221 Or 620, 332 P2d 71 (1958), 351 P2d 85 (1960), has, however, commented in a case dealing only with appointed counsel:

> "* * * Very likely Art I, § 11, of the Oregon Constitution, which grants the accused the right 'to be heard by himself and counsel,' means that he shall be heard by counsel of his own choice if he wishes * * * ." 221 Or at 639.

Both plaintiff and defendant refer us to *Chandler v. Fretag,* 348 US 3, 75 S Ct 1, 99 L Ed 4 (1954), and

---

[①] Oregon Constitution, Art I, § 11:

"In all criminal prosecutions, the accused shall have the right * * * to be heard by himself and counsel * * *."

*People v. Crovedi,* 65 Cal 2d 199, 53 Cal Rptr 284, 417 P2d 868 (1966). These two cases, while clearly different on their facts from the case at bar, are, nevertheless, quite instructive. In *Chandler,* the defendant decided he did not need an attorney because he intended to plead guilty to housebreaking and larceny, an offense punishable by a term of three to ten years. At trial he was advised by the court for the first time that he would also be tried as an habitual criminal, which carried a mandatory life sentence with no possibility of parole. Not surprisingly, he immediately asked for a continuance to obtain counsel. His request was summarily denied and, after trial, he was sentenced to life imprisonment. In reversing, the United States Supreme Court held:

> "* * * Regardless of whether petitioner would have been entitled to the appointment of counsel, his right to be heard through his own counsel was unqualified. * * *" 348 US at 9.

In *Crovedi* the trial court refused to grant a continuance to defendant, whose attorney, during the trial itself, had suffered a heart attack. Instead, it substituted, over the objection of defendant, the original attorney's partner, even though the state would not have been particularly harmed or inconvenienced by a continuance. The Supreme Court of California, after a thorough discussion of the *Chandler* case, then pointed out:

> "That the concept of procedural due process, as it relates to the right of counsel, manifests a value seeking to insure respect for the dignity of the individual does not, of course, demand the result that due process is denied any defendant who is refused the right to defend himself by means of his chosen retained counsel. The reason is that other values of substantial importance, for instance that seeking

to insure speedy determination of criminal charges, demand recognition.

"* * * Thus, though it is clear that a defendant has no *absolute* right to be represented by a particular attorney, still the courts should make all reasonable efforts to ensure that a defendant financially able to retain an attorney of his own choosing can be represented by that attorney. * * *" (Emphasis in original.) 65 Cal 2d at 206-07.

The court concluded:

"All of the foregoing cases demonstrate a conviction that the state should keep to a necessary minimum its interference with the individual's desire to defend himself in whatever manner he deems best, using any legitimate means within his resources—and that that desire can constitutionally be forced to yield only when it will result in significant prejudice to the defendant himself or in a disruption of the orderly processes of justice unreasonable under the circumstances of the particular case." 65 Cal 2d at 208.

We agree that this is a correct test. The requirements of due process exist primarily to assure that a defendant receives a fair trial as guaranteed by the Constitution. Additionally, however, they seek to establish an environment for his trial designed to assure that a reasonable person feels at its conclusion, and regardless of its outcome, that he has in fact as well as in law received a fair trial. Particularly important in this latter context is the right to be represented by retained counsel of the defendant's own choosing. We think that the likelihood of "significant prejudice to the defendant himself or * * * a disruption of the orderly processes of justice unreasonable under the circumstances of the particular case" *(People v. Crovedi,* supra, 65 Cal 2d at 208) must be clear and con-

vincing to warrant the removal by the court against the will of a defendant of privately retained counsel.

It will be recalled that during the hearing on February 12, 1971, the trial judge concluded he had "absolute confidence" in Mr. Lonergan's contention that he had received no information from Mrs. Williams that could possibly create any conflict of interest. Thus, his continued representation of the defendant posed no hazard that he could use information gained during his attorney-client relationship with Mrs. Williams to improperly influence the state's principal witness. The record amply supports this conclusion.

The principal factor apparently influencing Judge Roth to remove Mr. Lonergan on February 12 was that change of attorneys four days before trial was merely an effort to delay trial. Here, however, Mr. Lonergan subsequently testified, and the state conceded during oral argument here, that at the time he was removed from the case, Mr. Lonergan was prepared to go to trial on the scheduled date, February 16, 1971. Thus, the possibility of prolonging the incarceration of Mrs. Williams as a material witness, or any other hazard created by an effort to delay trial, cannot be considered as a factor supporting Mr. Lonergan's removal as defendant's attorney.

We conclude that under these circumstances Mr. Lonergan's representation of the defendant would not have resulted in an unreasonable disruption "of the orderly processes of justice." *People v. Crovedi,*supra, 65 Cal 2d at 208. Consequently, Judge Roth's action on February 12 removing him as defendant's attorney and substituting Mr. Simmons constituted a denial of due process of law.

■ Finally, we conclude that it is not necessary for a defendant to show prejudice when, as here, his right to be represented by retained counsel of his own choosing has been improperly denied. *Reynolds v. Cochran,* 365 US 525, 81 S Ct 723, 5 L Ed 2d 754 (1961); *People v. Crovedi,* supra.

Defendant's motion for a new trial should have been granted.

Reversed and remanded.