Argued and submitted March 28, affirmed July 10, 2002

# STATE OF OREGON,
## *Respondent,*

*v.*

# CULLEN JOHNSON PYLE,
## *Appellant.*

## 97CR0082; A107243

50 P3d 591

Jesse Wm. Barton, Chief Deputy Public Defender, argued the cause for appellant. With him on the brief was David E. Groom, State Public Defender.

Doug M. Petrina, Assistant Attorney General, argued the cause for respondent. With him on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Before Edmonds, Presiding Judge, and Kistler and Brewer, Judges.

BREWER, J.

**BREWER, J.**

Defendant appeals from a judgment of conviction for murder. ORS 163.115. He asserts that the trial court erred in refusing his pretrial request to discharge his retained attorney and in denying his companion request for court-appointed counsel. We affirm.

Defendant was indicted in 1997 for the murder of his wife. Before his arraignment, defendant retained Steven Plinski (counsel) to represent him. At a pretrial hearing, the court denied the state's motion *in limine* to admit certain evidence. The state appealed that ruling, and we affirmed. *State v. Pyle*, 155 Or App 74, 963 P2d 721, *rev den* 328 Or 115 (1998). On remand, the case was set for trial on May 24, 1999.

On May 3, 1999, counsel filed a motion to withdraw from the case because defendant had not paid his fees pursuant to their agreement. In a supporting affidavit, counsel attested that defendant "consented to [counsel's] withdrawal and understands that the withdrawal will result in a continuance of his trial."[1] At a hearing on the motion to withdraw held on May 3, defendant requested permission from the court to fire counsel:

"[THE COURT:] [Defendant], do you want to fire [counsel]?

"DEFENDANT:   Yes, Your Honor.

"THE COURT:   Give me the reasons.

"DEFENDANT:   I have a brief statement. May I read it?

"THE COURT:   You can give it to me."

The court then read the seven page, handwritten statement that defendant submitted. In the written statement, defendant asserted that he had obtained a report from Dr. DeCato opining that a police urinalysis report showed that his blood contained dangerous levels of a prescription drug compound,

---

[1] The trial court denied counsel's motion to withdraw. Although defendant has not assigned error to that ruling, the state does not contend that defendant's failure to do so precludes him from assigning error to the court's denial of his separate request to discharge counsel. Accordingly, we do not consider the matter further.

benzodiazepine, on the night his wife was killed. Defendant also asserted that counsel had misled him throughout the previous two years by repeatedly telling him that a toxicology report showed that the drug was not present in his blood and that the failure to discover this evidence sooner was due to "a gross negligent and careless error made by [counsel]." The statement concluded with the following combined request:

> "Because of my civil responsibilities and my depleted resources I now ask the court and the State of Oregon for financial relief. I need the court to appoint a 'new' legal defense team to me that is experienced and competent with murder cases. Please give me the opportunity to defend myself at a new pretrial and trial date in the name of truth and justice."

The court also read DeCato's report. Counsel represented to the court that he "would not intentionally lie" to defendant about the potential drug-influence evidence. The court then engaged in the following colloquy with defendant:

> "THE COURT:  [To defendant.] * * * Is that what you think? [Counsel] lied to you?
>
> "DEFENDANT:  Yes, he did, Your Honor.
>
> "THE COURT:  And just because he told you he didn't think there were drugs present?
>
> "You already knew about the State Crime Lab report, didn't you?
>
> "DEFENDANT:  Yes, he did. That's why we had— that's why Mr. Steiner had [counsel] take the blood sample and get it tested - - -
>
> "THE COURT:  (Interposing) Right.
>
> "DEFENDANT:  - - - and I was informed that blood came back negative for drug compounds for the last two years. And so, just - - -
>
> "THE COURT:  (Interposing) Well, we already knew that the drug was in your system from the State Crime Lab report, and so did [counsel].
>
> "DEFENDANT:  Well, according to that report, there, it's saying it's [a] nonconclusive report. We couldn't prove anything by it.

"THE COURT: Well, the blood sample that I understand is now contaminated so it can't. But you clearly have somebody who—in Dr. DeCato who is prepared to testify that this drug causes all sorts of problems when taken with alcohol. So the evidence—you certainly have somebody present to testify to the exact thing you want—you want brought up.

"DEFENDANT: I want to go back to my Omnibus Hearing, Your Honor, and prove to the Court that my statements made to police officials on January 9, 1997 [were] under an alcohol and drug stupor.

"THE COURT: No one has requested that hearing yet, [defendant]. And that may be something that—[D]r. DeCato is present in the county and can testify, and they can call him. If they want to schedule a hearing to raise that issue, they can.

"DEFENDANT: I'm lost here, Your Honor, I mean, I've been, you know, misled here for two years. I'd like to have - - -

"THE COURT: (Interposing) I don't think you've been - - -

"DEFENDANT: - - - I'd like to have—you know, I've spent all my money. You know, I'd like to get a new defense and start all over again.

"THE COURT: That's not going to happen, [defendant], because what you're alleging—and I don't believe [counsel] lied to you. It'd be hard to lie to somebody who knows the facts. So I don't find that that's correct and I find that the evidence, if you want it admitted, is right here in Dr. DeCato's letter and he can testify to it. There's no way to go back and get a blood sample that's already been destroyed.

"* * * * *

"THE COURT: We already know the drug's in your system.

"DEFENDANT: Well then, you know, it was never brought up in my Omnibus Hearing, just the alcohol.

"THE COURT:   Well, if they want to request a hearing
- - -

"DEFENDANT:   (Interposing) Your Honor, I'm just trying to tell you the truth. That night I was on another planet talking to police there.

"THE COURT:   Well, it may be and I'm not denying your right to have an Omnibus Hearing. You've already got the evidence. The evidence is here and Dr. DeCato can testify. If they want a hearing on the Omnibus Hearing, I'll set an Omnibus Hearing before your trial date.

"DEFENDANT:   Well, could I get a[ ] new defense team?

"THE COURT:   No. You're not getting a new defense team because there's nothing here that shows me that you need a new defense team.

"* * * * *

"THE COURT:   And I don't find a basis for [defendant] to fire [counsel]. As I said, * * * I haven't found he's lied to [defendant], and [defendant's] evidence that he wants in is here and ready to go."

Trial was held three weeks later, as scheduled, and defendant, represented by original counsel, was convicted of murder.

On appeal, defendant advances two assignments of error. First, he argues that the trial court erred in denying his request to fire counsel. In his second assignment of error, defendant argues that the trial court erred in denying his request for court-appointed substitute counsel. In his brief on appeal, defendant concedes that his requests to fire counsel and for substitute court-appointed counsel "significantly overlap." According to defendant, the trial court abused its discretion in denying his requests, because granting them would not have impeded the orderly processes of justice. The state responds that defendant's request to fire counsel did not implicate his right to retain an attorney of his choice, because the request was conditioned on the provision of a substitute court-appointed attorney. The state argues that the trial court properly exercised its discretion to deny defendant's

combined request, because defendant raised no legitimate complaint about the quality of counsel's representation.

In his written submission and oral statements to the trial court, defendant made three requests: (1) to fire his retained counsel; (2) for appointment of new counsel at public expense; and (3) for a continuance of his trial date.[2] Defendant acknowledges that "accommodating his choice of counsel would have required appointing new counsel at public expense." We agree that defendant made his requests as a package; there is nothing in the record to suggest, for example, that he wanted to fire counsel if the consequence was that he must proceed to trial without legal representation. Accordingly, we regard defendant's assignments of error as addressing a combined request.

■ The first part of defendant's request was for permission to fire counsel. A criminal defendant has the right to discharge retained counsel, "subject to judicial discretion if accommodation of the right would result in 'a disruption of the orderly processes of justice unreasonable under the circumstances of the particular case.'" *State v. Pflieger*, 15 Or App 383, 386-87, 515 P2d 1348 (1973), *rev den* (1974) (quoting *State v. Greenough*, 8 Or App 86, 92, 493 P2d 59 (1972)). The relevant circumstances include all components of defendant's combined request, including the reasons given for them. *Id.*; *see also State v. Zaha*, 44 Or App 103, 106-07, 605 P2d 306 (1980) (holding that, under the circumstances, the defendant's companion requests for a continuance and removal of court-appointed counsel so that he could retain counsel "was not an attempt to destroy or impede 'the orderly processes of justice'").

■ The trial court permitted defendant to state, on the record, the reasons why he believed that counsel should be discharged. As the colloquy set out above demonstrates, the court did consider, in making its ruling, defendant's assertion that counsel's representation had been inadequate. In his written submission, defendant asserted to the court that

---

[2] Defendant does not assign error to the trial court's denial of his request for a continuance. In fact, defendant argues on appeal that he did not seek a continuance of the trial date. That contradiction of the trial court record will be examined further below.

counsel had lied to him about whether a blood toxicology report disclosed the presence of benzodiazepine in his system and that counsel did not have defendant's blood sample tested for the compound. The trial court found that defendant's claim that counsel had lied to him was not credible and that there was no evidence that counsel had failed to have defendant's blood sample tested. Instead, defendant's submissions, including DeCato's report, showed that a blood sample sent for laboratory testing was contaminated and could not be tested. Moreover, there was no evidence that counsel was responsible for the contamination of the sample. In addition, DeCato's report opined that a state police urinalysis report showing that the drug compound was present in defendant's system was sufficient to conclude, in accordance with defendant's theory of defense, that his conduct at the time of the killing was influenced by a dangerous drug and alcohol combination.

Therefore, the trial court properly concluded that defendant's stated complaints about counsel's performance were not legitimate. For that reason, the court would not have abused its discretion in denying defendant's request without further inquiry *if* defendant had merely sought substitution of one court-appointed attorney for another. *See* ORS 135.050(5) ("The court having jurisdiction of the case may substitute one appointed counsel for another at any stage of the proceedings when the interests of justice require such substitution."); *see also State v. Langley*, 314 Or 247, 257, 839 P2d 692, *modified on recons* 314 Or 511 (1992) ("[A] defendant has 'no right to have another court-appointed lawyer in the absence of a legitimate complaint concerning the one already appointed for him.' ") (quoting *State v. Davidson*, 252 Or 617, 620, 451 P2d 481 (1969)). However, defendant's counsel was retained, not appointed. Accordingly, the relevant inquiry was whether counsel's discharge and the corresponding appointment of a new attorney would have disrupted the orderly processes of justice. *Pflieger*, 15 Or App at 386-87.

■ On appeal, defendant asserts that, regardless of other circumstances, including the proximity of the scheduled trial date, the trial court was required—in light of his alleged indigency—to appoint substitute counsel for him.

Defendant argues that the issue of whether the substitution would have necessitated a continuance should have awaited the studied consideration of new counsel. However, defendant did not make that argument to the trial court. Instead, by expressly seeking a postponement of the trial date, defendant acknowledged that the appointment of new counsel would have required a continuance. Defendant's shift in position on appeal prevents us from considering whether the trial court abused its discretion in failing to determine whether a delay in the proceedings would have been required by a substitution of counsel (because defendant now argues that it was premature to consider that issue) and, if so, whether any necessary delay would have unduly impeded the orderly processes of justice (because defendant does not assign error to the denial of his request for a continuance). In sum, we are left with defendant's argument on appeal that, apart from his complaint about counsel's competence, the only relevant factor for consideration was his purported indigence. Even if the trial court had determined that defendant was indigent, though, the court still would have had discretion to decide whether to appoint substitute counsel. ORS 135.050(6).[3] Because defendant does not acknowledge that the court had any discretion to deny his request for court-appointed counsel, much less suggest how the court erred in exercising it, he presents no ground for reversal of his conviction.

Even if the record permitted us to conclude that the trial court abused its discretion, the question would remain whether defendant was prejudiced as a consequence. *See State v. Edwards*, 132 Or App 590, 594, 890 P2d 423 (1995) (holding that trial court's refusal to appoint substitute counsel did not prejudice the defendant, because there was no evidence that his defense was impaired by his counsel's lack of investigation); *see also State v. Maletta*, 98 Or App 643, 648-49, 649 n 3, 781 P2d 350 (1989), *rev den* 309 Or 522 (1990) (applying prejudice test to question of whether violation of ORS 151.480, mandating appointment of "suitable" counsel,

---

[3] ORS 135.050(6) provides, in part:

"If, at any time during criminal proceedings, the court having jurisdiction of the case finds that the defendant is financially unable to pay counsel whom the defendant has retained, the court may appoint counsel as provided in this section."

required dismissal of aggravated murder charges). As we have already determined, the trial court did not abuse its discretion in concluding that defendant's complaint about the adequacy of counsel's representation was not legitimate. Because defendant has not asserted, either at trial or on appeal, that counsel's performance otherwise was inadequate in any respect, there is no evidence that he was prejudiced by the trial court's failure to grant his combined request.[4]

Affirmed.

---

[4] Defendant does not contend that he was prejudiced because he was required to incur additional attorney fees as a consequence of the court's refusal to grant his combined request, nor do we suggest that that financial obligation constituted a form of prejudice that is cognizable in this context.