**Christopher LOVIN**

v.

**STATE of Tennessee.**

Supreme Court of Tennessee.

Sept. 3, 2008 Session.

April 23, 2009.

Jason D. Demastus, Chattanooga, Tennessee, for the appellant for the purpose of oral argument only; Christopher Lovin, Wartburg, Tennessee, pro se.

Robert E. Cooper, Jr., Attorney General and Reporter; Michael E. Moore, Solicitor General; and Mark A. Fulks, Senior Counsel (on appeal); and William Paul Phillips, District Attorney General; and John W. Galloway, Jr., Assistant District Attorney General (at trial), for the appellee, State of Tennessee.

Wade V. Davies and Anne Passino, Knoxville, Tennessee, for the Amicus Curiae, Tennessee Association of Criminal Defense Lawyers.

## OPINION

WILLIAM C. KOCH, JR., J., delivered the opinion of the court, in which JANICE M. HOLDER, C.J., WILLIAM M. BARKER, CORNELIA A. CLARK, and GARY R. WADE, JJ., joined.

This appeal involves the procedure to be followed when a prisoner desires to discharge retained counsel and to represent himself on appeal from the denial of a petition for post-conviction relief. The prisoner was convicted of first degree murder in the death of his infant son. After

his conviction was affirmed on appeal, the prisoner filed a petition for post-conviction relief in the Criminal Court for Claiborne County. He became dissatisfied with the lawyer his parents retained to represent him in the post-conviction proceeding. After the trial court dismissed his post-conviction petition and the case was appealed to the Court of Criminal Appeals, the prisoner attempted to discharge his retained lawyer and to represent himself before the appellate court. However, his retained lawyer declined to withdraw because the Court of Criminal Appeals had denied the prisoner's motion to dismiss his retained counsel. Thereafter, the Court of Criminal Appeals affirmed the denial of the prisoner's petition for post-conviction relief, and the prisoner filed a Tenn. R.App. P. 11 application. We granted the prisoner's application for permission to appeal to determine whether the prisoner had effectively discharged his retained lawyer and whether the Court of Criminal Appeals should have permitted him to represent himself on appeal from the denial of his petition for post-conviction relief. We have determined that the prisoner effectively discharged his retained lawyer and that the lawyer should have notified the Court of Criminal Appeals that he desired to withdraw from the case because he had been discharged. Because the retained lawyer failed to inform the Court of Criminal Appeals that he had been discharged, we vacate the judgment affirming the denial of the prisoner's petition for post-conviction relief and remand the case to the Court of Criminal Appeals for further proceedings consistent with this opinion.

**I.**

Caylis Lovin was born three months prematurely. On October 16, 2000, when he was only four months old, Caylis died as a result of either a violent shaking or a severe blow, either of which was sufficient to kill him. A Claiborne County jury convicted his father, Christopher Lovin, of first degree murder in the perpetration of aggravated child abuse. Mr. Lovin, who was represented by two public defenders at trial, was sentenced to life in prison with the possibility of parole. The Court of Criminal Appeals affirmed the conviction. *State v. Lovin*, No. E2002–01231–CCA–R3–CD, 2003 WL 22462532 (Tenn.Crim. App. Oct.31, 2003) (No Tenn. R.App. P. 11 application filed).

Mr. Lovin filed a pro se petition for post-conviction relief and a "memorandum of law and supporting facts" on April 7, 2004. Later, on November 12, 2004, he filed a pro se amendment to his petition for post-conviction relief and a supporting memorandum of law in which he alleged that he had not received effective representation from the public defenders who represented him at trial.[1] Mr. Lovin also asserted that he was indigent and requested the trial court to appoint a lawyer to represent him in the post-conviction proceeding. The trial court appointed a lawyer to represent Mr. Lovin, and on December 6, 2005, the appointed lawyer filed an amended post-conviction petition that also included an ineffective assistance of counsel claim.[2]

Mr. Lovin's father, acting on his son's behalf, thereafter retained J. Liddell Kirk, a lawyer practicing in Knoxville, to represent Mr. Lovin in the post-conviction pro-

---

1. Mr. Lovin described eleven specific acts or omissions by the public defenders to support his ineffective assistance of counsel claim.

2. The amended post-conviction petition filed by Mr. Lovin's appointed lawyer described three specific acts or omissions by the public defenders in support of the ineffective assistance of counsel claim.

ceeding. Mr. Kirk filed a second amended petition for post-conviction relief on Mr. Lovin's behalf on July 13, 2006.[3] While the proceedings in the trial court were pending, the relationship between Mr. Lovin and Mr. Kirk began to sour because Mr. Lovin became concerned about the infrequency of their communications and Mr. Kirk's disinclination to raise issues that Mr. Lovin thought should be raised. Accordingly, on August 2, 2006, just nine days before the hearing on his post-conviction petition, Mr. Lovin filed a pro se amendment to his original post-conviction petition expanding on one of his claims regarding the ineffectiveness of the public defenders who had represented him.

On the same day he filed his amended pro se petition, Mr. Lovin filed a motion entitled a "Motion to Proceed Pro Se in Seeking Post–Conviction Relief and to Allow Present Counsel . . . to Remain as Co–Counsel." In this motion, Mr. Lovin complained that he had not authorized either the appointed counsel or Mr. Kirk to amend his original post-conviction petition and that, despite his requests, Mr. Kirk had failed to meet with him to discuss several issues of importance. Concerned about the possibility of waiver, Mr. Lovin wrote, "[p]etitioner needs to preserve all issues not raised or that counsel would refuse to raise[,] . . . which he cannot do unless he is allowed to proceed as counsel with [his attorney] assisting as co-counsel." However, Mr. Lovin expressly noted that he did "not seek to dismiss or replace present counsel," and that he was "in no way . . . attempting to relieve" his attorney of his obligations.

The trial court did not rule on Mr. Lovin's motion prior to the post-conviction hearing that was held on August 11, 2006. Mr. Lovin broached the subject of self-representation to the trial court during the hearing and again expressed concern about waiving any of his ineffective assistance of counsel claims.[4] The trial court expressed a willingness to allow Mr. Lovin to proceed pro se "if that arises." Later in the proceeding, the trial court permitted Mr. Lovin to present orally the ineffective assistance of counsel issues that Mr. Kirk had considered frivolous and had refused to raise.

The State called one of the public defenders who represented Mr. Lovin at trial to respond to the allegations of ineffective assistance of counsel. He testified that, contrary to Mr. Lovin's allegations, he had consulted with a medical expert but that no reasonable expert would have disagreed with the State's witnesses. He also testified that Mr. Lovin was examined and found to be competent, that a second EMT's testimony, which Mr. Lovin claimed would corroborate his theory of events, would not have added exculpatory evidence, and that he had decided not to pursue the theory that the child's mother inflicted the injuries because Mr. Lovin requested him not to and because the theory was not consistent with the evidence. On cross-examination, the public defender testified that the second EMT's testimony would have been consistent with the defense's position that the child was severely congested. He also testified that, in the face of strong physical evidence of intentional injuries, he had chosen not to pursue the theory that the mother inflicted the

---

3. The second amended post-conviction petition prepared and filed by Mr. Kirk described six acts or omissions by the public defenders in support of the ineffective assistance of counsel claim.

4. Specifically, Mr. Lovin told the trial court that "[i]f it came down to a conflict of interest between me and him [Mr. Kirk], I'd represent myself if I had to, to get those other two issues on record."

injuries as a strategic move, believing it preferable to rely on one theory rather than to "shotgun it." The public defender also remembered some minor inconsistencies between Mr. Lovin's testimony and that of the child's mother but could not recall whether, during cross-examination, he had asked the State's witnesses questions about possible injuries resulting from the improper administration of CPR or of the child's medicine.

The trial court entered an order on August 11, 2006, denying Mr. Lovin's petition for post-conviction relief. On September 7, 2006, Mr. Kirk filed a notice of appeal on behalf of Mr. Lovin.

By this point, the professional relationship between Mr. Lovin and Mr. Kirk had disintegrated. Mr. Lovin was displeased with the lack of communication between them, Mr. Kirk's refusal to raise issues that Mr. Lovin believed he had promised to raise, and finally, Mr. Kirk's refusal to withdraw from the case both in the trial court and on appeal. On October·26, 2006, less than two months after the filing of the notice of appeal, Mr. Lovin filed a motion in the Court of Criminal Appeals to dismiss Mr. Kirk as his lawyer and to represent himself on appeal. Mr. Lovin asserted in this motion:

> 2. That during the entire representation of Appellant Counsel refused and refuses to properly communicate with him including failing to provide the appellant with copies of relevant documents that counsel has filed on his behalf including any and all documents allegedly filed in the post-conviction court and in this appeal;

> 3. That all communications between appellant and counsel have completely ceased to exist and in light of the fact that counsel seems to ignore the appellant and appellant's best interest in regards to the case and issues herein appellant desires that he be dismissed from the case and that appellant be allowed to proceed pro se herein this appeal.

Accordingly, Mr. Lovin requested the Court of Criminal Appeals to dismiss Mr. Kirk, to strike any brief that Mr. Kirk may have filed on his behalf, and to grant him a thirty-day extension of time within which to prepare and file his own brief. Unbeknownst to Mr. Lovin, the record of the post-conviction proceedings had not yet been filed with the Court of Criminal Appeals when he filed his motion.

Mr. Lovin and Mr. Kirk exchanged correspondence after Mr. Lovin filed his motion.[5] On November 9, 2006, Mr. Kirk wrote a letter to Mr. Lovin stating that "[i]f you want to write your own brief, that is up to you and to the Court of Criminal Appeals. If they grant your motion and relieve me, I will not file one." On January 11, 2007, the Court of Criminal Appeals filed an order denying Mr. Lovin's motion to dismiss Mr. Kirk and to permit Mr. Lovin to represent himself on the ground that "[c]ounsel's representation of the petitioner is a matter of contract between the petitioner and counsel."

On January 14, 2007, Mr. Lovin sent a letter to Mr. Kirk stating, "I continue to desire to file my own brief and as well want you to WITHDRAW from my case that I may pursue my appeal pro se." The letter concluded with the following: "Due

---

5. Neither Mr. Lovin nor Mr. Kirk made this correspondence available to the Court of Criminal Appeals. Mr. Lovin attached it to his Tenn. R.App. P. 11 application for permission to appeal, and later filed a Tenn. R.App. P. 14 motion requesting this Court to treat the correspondence as post-judgment facts. We will address the status of these documents in Section II of this opinion.

to the fact that you still remain as my counsel, I still continue to desire to file pro se on my appeal, [s]o I need you to withdraw from my case and send me a copy of the withdrawl [sic][.] If you refuse to withdraw from my case and prevent me from filing pro se on my appeal, [t]hen please advise me so and send me copies of the appeal brief. . . ."

Despite Mr. Lovin's renewed request that he withdraw, Mr. Kirk filed a brief on Mr. Lovin's behalf with the Court of Criminal Appeals on January 16, 2007. Mr. Kirk did not inform the Court of Criminal Appeals that Mr. Lovin had discharged him or that Mr. Lovin desired to file his own brief. Less than two weeks later, on January 28, 2007, Mr. Lovin again corresponded with Mr. Kirk. On this occasion, Mr. Lovin informed Mr. Kirk he had discovered that Mr. Kirk had filed a brief on his behalf and castigated Mr. Kirk for failing to provide him with copies of any documents that had been filed on his behalf. He told Mr. Kirk that

> since the beginning of your representation I feel that you have totally disregarded my rights in this case as you not only failed to amend my petition, with the proper certification of counsel, but also failed to notify me or provide me with copies of the relevant or any documents that you have filed on my behalf.

Mr. Lovin concluded the letter by threatening to file a complaint against Mr. Kirk with the Board of Professional Responsibility if Mr. Kirk did not provide him with a copy of the brief filed in the Court of Criminal Appeals and "all other documents and responses in relation to this appeal" by February 9, 2007. In an unsigned[6] letter dated "February 2007,"[7] Mr. Kirk

stated that "[y]ou sought permission from the Court of Criminal Appeals to represent yourself and they denied it. So I had no choice but to file a brief for you." He also promised to send Mr. Lovin a copy of the brief if he did not have one. Mr. Kirk also informed Mr. Lovin that some of the arguments Mr. Lovin desired to make were frivolous. Mr. Kirk again failed to inform the Court of Criminal Appeals that Mr. Lovin had requested him to withdraw or that Mr. Lovin desired to file his own brief.

On July 5, 2007, the Court of Criminal Appeals filed its opinion affirming the denial of Mr. Lovin's post-conviction petition. *Lovin v. State*, No. E2006–01883–CCA–R3–PC, 2007 WL 1946667, at *10 (Tenn. Crim.App. July 5, 2007). Its opinion addressed only the ineffective assistance of counsel arguments that were contained in the brief that Mr. Kirk had prepared. The opinion did not address the other numerous acts and omissions of the public defenders in the original trial that Mr. Lovin had taken issue with in his petition and amended petition for post-conviction relief, during the post-conviction hearing, or in his discussions with Mr. Kirk.

We granted Mr. Lovin's pro se application for permission to appeal on January 14, 2008. Later, on February 7, 2008, Mr. Kirk requested permission to withdraw as Mr. Lovin's lawyer. We entered an order on February 19, 2008, denying Mr. Kirk's motion because it was moot in light of the fact that we had already granted Mr. Lovin's pro se application for permission to appeal and because Mr. Lovin had not requested the appointment of counsel to represent him in the proceedings before this Court.

---

6. While both of Mr. Kirk's letters submitted by Mr. Lovin are unsigned, they are printed on Mr. Kirk's letterhead and are also accompanied by envelopes bearing the letterhead.

7. The envelope accompanying this letter is postmarked "26 Feb 2007."

## II.

Mr. Lovin attached the four pieces of correspondence between him and Mr. Kirk to his pro se application for permission to appeal. On April 24, 2008, after this Court had granted his application for permission to appeal, Mr. Lovin filed a Tenn. R.App. P. 14 motion requesting us to consider these pieces of correspondence as post-judgment facts. He also filed an affidavit stating that the facts contained in his motion to consider post-judgment facts were true. We will now address the status of this correspondence.

■ Tenn. R.App. P. 14, by its own terms, generally extends "only to those facts, capable of ready demonstration, affecting the positions of the parties or the subject matter of the action." Tenn. R.App. P. 14(a). Typically, these facts include facts relating to "mootness, bankruptcy, divorce, death, other judgments or proceedings, relief from the judgment requested or granted in the trial court, and other similar matters." Tenn. R.App. P. 14(a). Appellate courts should generally consider only those facts established at trial, and thus Tenn. R.App. P. 14 is not intended to permit the parties to retry a case on appeal. Tenn. R.App. P. 14 advisory comm'n cmt. However, the rule permits appellate courts, in their discretion, to consider facts "unrelated to the merits and not genuinely disputed" that "are necessary to keep the record up to date." Tenn. R.App. P. 14 advisory comm'n cmt.

There are no "hard and fast" standards for Tenn. R.App. P. 14's application. *Duncan v. Duncan,* 672 S.W.2d 765, 767 (Tenn. 1984). In the past, this Court has used Tenn. R.App. P. 14 to consider facts that were undisputed and readily ascertainable or facts that were undisputed and which rendered a judgment moot. *See, e.g., Reece v. Findlay Indus., Inc.,* 83 S.W.3d 713, 717 n. 3 (Tenn.2002); *Cain P'ship Ltd. v. Pioneer Inv. Servs. Co.,* 914 S.W.2d 452, 454 n. 2 (Tenn.1996); *State ex rel. SCA Chem. Waste Servs., Inc. v. Konigsberg,* 636 S.W.2d 430, 432 (Tenn.1982). On the other hand, both this Court and the Court of Appeals have declined to invoke Tenn. R.App. P. 14 with regard to (1) facts that are irrelevant, *Brooks v. Bd. of Prof'l Responsibility,* 145 S.W.3d 519, 523 n. 10 (Tenn.2004), (2) facts that are disputed, *Duncan v. Duncan,* 672 S.W.2d at 768–69, or (3) facts that took place before the trial court's judgment was entered, *Painter v. Toyo Kogyo of Japan,* 682 S.W.2d 944, 952 (Tenn.Ct.App.1984).

■ We have determined that Mr. Lovin's motion to consider the post-judgment correspondence between him and Mr. Kirk should be granted. The correspondence occurred after the entry of the trial court's order dismissing Mr. Lovin's petition for post-conviction relief. Our consideration of the correspondence will not impugn the fact-finding process the trial court employed in the post-conviction proceeding, and the correspondence itself has no bearing on the substantive merits of Mr. Lovin's petition for post-conviction relief. The correspondence is, however, directly relevant to Mr. Lovin's post-judgment claim that he should have been permitted to represent himself on appeal. Finally, the State does not contest the authenticity of the copies of the correspondence submitted by Mr. Lovin.[8]

---

8. The State does not concede that the correspondence is genuine. However, the authenticity of the correspondence is "capable of ready demonstration." Tenn. R.App. P. 14(a). Our decision to consider these documents for the purpose of deciding this case does not prevent the State from challenging the authenticity of these documents during the proceedings following the remand of this case should it desire to do so.

## III.

We are called upon in this case to determine whether Mr. Lovin may discharge his retained lawyer and then represent himself on appeal from the denial of his petition for post-conviction relief. If Mr. Lovin may discharge his retained lawyer, we must also define the procedure that should be followed with regard to the discharge of the lawyer and Mr. Lovin's decision to forego legal representation and to represent himself. Based on this record, we have determined that Mr. Lovin is entitled to discharge his retained lawyer and that his request for permission to represent himself on appeal deserves judicial consideration.

## A.

■ We recognize at the outset that the right of self-representation and the right to counsel are alternative rights. In any particular proceeding, a person may assert one or the other, but not both. *State v. Berry,* 141 S.W.3d 549 app. at 573–74 (Tenn.2004). The scope of each of these rights depends on the character and stage of the proceeding in which they are invoked.

■ In criminal prosecutions, the accused has a right to the assistance of counsel guaranteed by the Sixth Amendment to the United States Constitution and Article I, Section 9 of the Constitution of Tennessee. This constitutional right applies not only to the trial but also to the first direct appeal as of right. *Douglas v. California,* 372 U.S. 353, 357, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963); *House v. State,* 911 S.W.2d 705, 712 (Tenn.1995); *see* Tenn. Code Ann. § 40–14–203 (2006). While the constitutional protection of the right to

counsel does not extend to post-conviction proceedings, *Pennsylvania v. Finley,* 481 U.S. 551, 555, 107 S.Ct. 1990, 95 L.Ed.2d 539 (1987); *House v. State,* 911 S.W.2d at 712, prisoners have a statutory right to counsel in post-conviction proceedings if their petition is not dismissed on preliminary consideration in accordance with Tenn.Code Ann. § 40–30–106(f) (2006). Tenn.Code Ann. § 40–30–107(b)(1) (2006). This statutory right applies not only to the proceedings in the trial court but also through the first level of appeal. Tenn. Code Ann. § 40–30–116 (2006) (providing right to post-conviction appeal); *Recor v. State,* 489 S.W.2d 64, 67 (Tenn.Crim.App. 1972).

■ By the same token, persons accused of crime have a right of self-representation at trial that is protected by the same constitutional provisions [9] that guarantee their right to counsel. *Faretta v. California,* 422 U.S. 806, 807, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975); *State v. Small,* 988 S.W.2d 671, 673 (Tenn.1999); *State v. Northington,* 667 S.W.2d 57, 60 (Tenn.1984). They do not, however, have a similar constitutionally protected right of self-representation on direct appeal. *Martinez v. Court of Appeal of Cal., Fourth Appellate Dist.,* 528 U.S. 152, 163, 120 S.Ct. 684, 145 L.Ed.2d 597 (2000); *Weatherly v. State,* 704 S.W.2d 730, 731 (Tenn. Crim.App.1985) Likewise, prisoners do not have a constitutionally protected right of self-representation in post-conviction proceedings or other proceedings to collaterally attack their convictions. *Cole v. State,* 798 S.W.2d 261, 263 (Tenn.Crim.App.1990); *State v. Reeves,* 610 S.W.2d 730, 731 (Tenn. Crim.App.1980).

9. U.S. Const. amend VI ("In all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defense"); Tenn. Const. art. I, § 9 ("That in all criminal prosecutions, the accused hath the right to be heard by himself and his counsel").

While the constitutional right to self-representation does not apply to post-conviction proceedings, both the statutes authorizing the appointment of counsel in post-conviction proceedings and the rules implementing these statutes recognize that prisoners have the right of self-representation in post-conviction proceedings. Prisoners may represent themselves if they do not request a lawyer [10] or if they decline to accept the offer of an appointed lawyer.[11] Post-conviction proceedings are frequently initiated by self-represented prisoners who file their own petitions, and Tenn.Code Ann. § 40–30–107(b)(2) expressly authorizes "petitioner[s] ... proceeding pro se" to file papers and represent themselves.

## B.

Respect for each person is the "lifeblood of the law." *Illinois v. Allen*, 397 U.S. 337, 350–51, 90 S.Ct. 1057, 25 L.Ed.2d 353 (1970) (Brennan, J., concurring); *Zagorski v. State*, 983 S.W.2d 654, 658 (Tenn.1998). No conduct is more personal than defending oneself against a criminal charge because, ultimately, it is the accused person who bears the consequences of the conviction. *Faretta v. California*, 422 U.S. at 834–35, 95 S.Ct. 2525. Many persons accused of crime view government-provided lawyers with suspicion, as agents of the government, and an attempt to force them to accept the services of a government-provided lawyer reinforces their belief that the government and the courts have set out to impair criminal defendants' ability to defend themselves and to undermine the fairness of their trial. *Faretta v. California*, 422 U.S. at 820–21, 834, 95 S.Ct. 2525;

Stephen J. Schulhofer & David D. Friedman, *Rethinking Indigent Defense: Promoting Effective Representation Through Consumer Sovereignty and Freedom of Choice for All Criminal Defendants*, 31 Am.Crim. L.Rev. 73, 86 (1993).

Accordingly, since the earliest days, our system of justice has been reluctant to force a lawyer on an unwilling client. *Adams v. United States ex rel. McCann*, 317 U.S. 269, 280, 63 S.Ct. 236, 87 L.Ed. 268 (1942); Restatement (Third) of the Law Governing Lawyers § 32 cmt. b (2000). The courts have respected the prerogative of criminal defendants to decide how best to defend themselves by keeping their interference with each defendant's decisions on these matters to a necessary minimum. *State v. Huskey*, 82 S.W.3d 297, 307–08 (Tenn.Crim.App.2002); *see also People v. Ortiz*, 51 Cal.3d 975, 275 Cal.Rptr. 191, 800 P.2d 547, 552 (1990).

■ As a general matter, clients should not be forced to entrust their legal matters to an unwanted lawyer. Accordingly, clients may discharge a retained lawyer whenever they cease to have absolute confidence in the lawyer's integrity, judgment, or professional competence. *Spofford v. Rose*, 145 Tenn. 583, 609, 237 S.W. 68, 76 (1922); *Chambliss, Bahner & Crawford v. Luther*, 531 S.W.2d 108, 110 (Tenn.Ct.App. 1975). As this Court noted over twenty-five years ago, a client may discharge a retained lawyer at any time, with or without cause. *Crawford v. Logan*, 656 S.W.2d 360, 364 (Tenn.1983) (citing *Chambliss, Bahner & Crawford v. Luther*, 531 S.W.2d at 109).

---

**10.** Tenn.Code Ann. § 40–30–107(b)(1) requires a prisoner to request a lawyer before one will be appointed.

**11.** Tenn. Sup.Ct. R. 13, § 1(e)(3) permits a prisoner to decline to accept an appointed lawyer if one is offered. Tenn. Sup.Ct. R. 13, § 1(f)(1)-(2) provides that a prisoner's refusal of counsel must be in writing and that it can only be effective when the court is satisfied that the prisoner fully understands the right to counsel and the consequences of proceeding pro se.

■ A retained lawyer who is discharged by a client must withdraw from representing the client. Tenn. Sup.Ct. R. 8, RPC 1.16(a)(3); *State v. Reid*, 213 S.W.3d 792, 833 (Tenn.2006). In litigated matters, the lawyer must notify the court in which the matter is pending that he or she has been discharged and then must withdraw from the case unless the court orders otherwise. Tenn. Sup.Ct. R. 8, RPC 1.16(c); *State v. Russell*, 10 S.W.3d 270, 274 (Tenn.Crim.App.1999). Requiring a retained lawyer to notify the court that he or she has been discharged enables the court to remain informed of the status of the parties' representation and also gives the court indirect oversight over a client's decision to discharge his or her retained lawyer.

■ The decision to permit a retained lawyer to withdraw from a case is a discretionary one. However, the courts should exercise their discretion "carefully and cautiously," *State v. Huskey*, 82 S.W.3d at 305 (quoting *Kizer v. State*, 80 Tenn. 564, 567 (1883)), to protect the individual's right to defend himself or herself in the manner in which he or she deems best consistent with effective judicial administration. *People v. Ortiz*, 275 Cal. Rptr. 191, 800 P.2d at 552. Accordingly, a court should decline to permit the withdrawal of a retained lawyer who has been

discharged by his or her client in only the most compelling circumstances.

■ When a prisoner desires to discharge a retained lawyer, the appropriate focus is on balancing the prisoner's right to discharge his or her lawyer against the court's obligation to administer justice efficiently by avoiding unreasonable delay. *People v. Ortiz*, 275 Cal.Rptr. 191, 800 P.2d at 552–53; *Jackson v. State*, 979 So.2d 442, 444 (Fla.Dist.Ct.App.2008). A prisoner's exercise of his or her right to discharge his or her lawyer cannot be permitted to "unduly hinder the fair, efficient and orderly administration of justice." *United States v. Panzardi Alvarez*, 816 F.2d 813, 816 (1st Cir.1987) (citations omitted). Thus, the courts should not permit prisoners to use their ability to discharge their retained lawyer as a tactical ploy to disrupt and delay orderly judicial proceedings. *State v. Chadwick*, 224 Tenn. 75, 78–80, 450 S.W.2d 568, 570 (1970); *State v. Zyla*, 628 S.W.2d 39, 41–42 (Tenn.Crim.App.1981); *see also Tyler v. State*, 945 So.2d 662, 664 (Fla.Dist.Ct.App.2007).

■ When a prisoner discharges a retained lawyer who has filed a notice of appeal in a post-conviction case, the court need not focus on whether the prisoner has good cause to discharge the lawyer.[12]

12. Good cause must be considered when a prisoner desires to discharge an appointed lawyer. Tenn.Code Ann. § 40–14–205(a) (2006). It must also be considered when a retained lawyer who has filed a notice of appeal seeks to withdraw from representing a defendant on direct appeal in a criminal case. Tenn. R.Crim. P. 37(e)(2). This rule, however, does not apply to a retained lawyer who has filed a notice of appeal in a post-conviction proceeding because the Tennessee Rules of Criminal Procedure do not apply to post-conviction proceedings unless made specifically applicable by Tenn. Sup.Ct. R. 28. *See* Tenn. Sup.Ct. R. 28, § 3(B); *Pike v. State*, 164 S.W.3d 257, 265–66 (Tenn.2005). This case

does not require us to address the correctness of the holding of the Court of Criminal Appeals in *State v. Gilmore*, 823 S.W.2d 566, 568–69 (Tenn.Crim.App.1991), that the defendant has the burden of establishing good cause to discharge his retained lawyer. That case involved a criminal trial, while this case involves an appeal from a post-conviction proceeding. We note, however, that the courts should avoid too much judicial interference with the attorney-client relationship. *See State v. Rimmer*, 250 S.W.3d 12, 29 (Tenn. 2008). Accordingly, the contours of the right of a defendant to discharge his or her retained lawyer in a criminal trial may very well be similar to the contours of the right of

Rather, the court should focus on: (1) whether the prisoner understands the consequences of discharging his or her retained lawyer, *Von Moltke v. Gillies,* 332 U.S. 708, 729, 68 S.Ct. 316, 92 L.Ed. 309 (1948) (Frankfurter, J., concurring) (calling for an "intelligent awareness of consequences" of waiver of rights to counsel); *Smith v. State,* 987 S.W.2d 871, 875 (Tenn. Crim.App.1998); (2) whether permitting the retained lawyer to withdraw will significantly prejudice the prisoner, *People v. Ortiz,* 275 Cal.Rptr. 191, 800 P.2d at 552; *State v. Benson,* 720 N.W.2d 191 (Iowa Ct.App.2006) (Table);[13] *Dixon v. Owens,* 865 P.2d 1250, 1252 (Okla.Crim.App.1993); and (3) whether permitting retained counsel to withdraw will disrupt or delay the orderly administration of justice, *People v. Ortiz,* 275 Cal.Rptr. 191, 800 P.2d at 552; *Fratcher v. State,* 842 So.2d 1044, 1046 (Fla.Dist.Ct.App.2003); *State v. Benson,* 2006 WL 1229992, at *8, 720 N.W.2d 191; *Dixon v. Owens,* 865 P.2d at 1252; *State v. Pyle,* 182 Or.App. 520, 50 P.3d 591, 594 (2002).

 A prisoner's decision to discharge a retained lawyer is not always without adverse consequences. Restatement (Third) of the Law Governing Lawyers § 32 cmt. b. While the court may permit the withdrawal of a retained lawyer who has been discharged, it may decline to appoint another lawyer to represent the prisoner, or it may decline to grant a continuance either to enable the prisoner to retain a new lawyer or to give a newly retained lawyer an opportunity to become more acquainted with the case. Accordingly, the court should satisfy itself that the prisoner understands the consequences of discharging the retained lawyer, particularly with regard to the prisoner's representation throughout the remainder of the proceeding, and the impact that discharging the retained lawyer will have on hearings that have already been scheduled.

### C.

Prisoners who discharge their retained lawyer in a post-conviction proceeding have several options with regard to their representation during the remainder of the proceeding. They may decide to retain a new lawyer. They may assert that they are indigent and request the appointment of a lawyer in accordance with Tenn. Sup. Ct. R. 13. Finally, they may decide to represent themselves.

 A prisoner's request to represent himself or herself in a post-conviction proceeding must meet three prerequisites. First, the request must be asserted in a timely manner. *State v. Herrod,* 754 S.W.2d 627, 629–30 (Tenn.Crim.App.1988) (finding that a defendant desiring to represent himself or herself at trial must assert the right of self-representation in a timely manner). Second, in order to assure that the prisoner has not waived counsel inadvertently and to prevent a prisoner from later claiming that his right to an appointed lawyer was improperly denied,[14] the prisoner's assertion of his or her desire to represent himself or herself must be clear and unequivocal. *Cole v. State,* 798 S.W.2d at 265; *Pryor v. State,* 632 S.W.2d 570, 570 (Tenn.Crim.App.1982).[15] Third, the asser-

a prisoner to discharge a retained lawyer in a post-conviction proceeding.

**13.** *See also State v. Benson,* No. 04–1036, 2006 WL 1229992, at *8, 720 N.W.2d 191 (Iowa Ct.App. Apr.26, 2006).

**14.** 3 Wayne R. LaFave et. al., *Criminal Procedure* § 11.5(d), at 752–53 (3d ed.2007).

**15.** A prisoner's statements and conduct can amount to a waiver of the prisoner's earlier unequivocal assertion of his right of self-representation. *McKaskle v. Wiggins,* 465 U.S.

tion of the right of self-representation must reflect a knowing and intelligent waiver of the right to counsel. *State v. Small,* 988 S.W.2d at 673; *State v. Northington,* 667 S.W.2d at 60.

■ A prisoner need not have legal training in order to effectively assert his or her right of self-representation in a post-conviction proceeding. *See State v. McCary,* 119 S.W.3d 226, 256 (Tenn.Crim. App.2003). However, to assure that the prisoner's waiver of his or her right to appointed counsel is knowing and intelligent, the court must conduct an intensive hearing on the record to advise the prisoner of the consequences of self-representation and to determine that the prisoner knows and understands the consequences of his or her decision. *See Cottingham v. Cottingham,* 193 S.W.3d 531, 536 (Tenn. 2006); *State v. Carruthers,* 35 S.W.3d 516, 546 (Tenn.2000); *State v. McCary,* 119 S.W.3d at 256–58; *see also* Tenn. R.Crim. P. 44(b)(1)(B).

**D.**

■ Based on this record, Mr. Lovin had clearly and unequivocally told Mr. Kirk that he was dissatisfied with his representation. After Mr. Kirk filed the notice of appeal, Mr. Lovin told him that he no longer desired Mr. Kirk's services and that he desired to represent himself and to file his own brief with the Court of Criminal Appeals. Mr. Kirk was required to

inform the court as soon as he was discharged by Mr. Lovin. Thus, at least following the receipt of Mr. Lovin's January 14, 2007 letter, Mr. Kirk should have informed the Court of Criminal Appeals that Mr. Lovin had discharged him. Had the Court of Criminal Appeals received this information, it would most likely have permitted Mr. Lovin to represent himself.

Mr. Lovin attempted to exercise his prerogative to represent himself on appeal in a timely manner—at the threshold of the appeal. His decision came approximately two months after the notice of appeal had been filed and before the appellate record had been filed with the Court of Criminal Appeals. Granting Mr. Lovin's request would not have unduly delayed the progress of the appeal because Mr. Lovin requested only a thirty-day continuance to enable him to prepare and file his own brief. Mr. Lovin did not request a continuance of an already scheduled hearing and did not request additional time to retain a new lawyer or seek a delay of the appeal while another lawyer was appointed to represent him.

■ The record contains sufficient evidence to support finding (1) that Mr. Lovin attempted to exercise his right of self-representation in a timely manner, (2) that granting him permission to represent himself on appeal would not have significantly prejudiced him,[16] and (3) that granting Mr.

---

168, 182, 104 S.Ct. 944, 79 L.Ed.2d 122 (1984); *United States v. Cano,* 519 F.3d 512, 516 (5th Cir.2008); *State v. Hood,* No. W2004–01678–CCA–R3–DD, 2005 WL 2219691, at *12 (Tenn.Crim.App. Sept.13, 2005) *perm. app. dismissed* (Tenn. Mar. 21, 2006). Courts should indulge every presumption against waiver of the right to counsel. *Brewer v. Williams,* 430 U.S. 387, 404, 97 S.Ct. 1232, 51 L.Ed.2d 424 (1977); *State v. Worrell,* 660 S.E.2d 183, 185 (N.C.Ct.App. 2008); *Williams v. State,* 252 S.W.3d 353, 356

(Tex.Crim.App.2008); *State v. Vermillion,* 112 Wash.App. 844, 51 P.3d 188, 192–93 (2002).

**16.** We decline to hold that a prisoner's decision to represent himself or herself necessarily increases the likelihood of an outcome unfavorable to the prisoner. While this notion was common wisdom at one time, *see McKaskle v. Wiggins,* 465 U.S. at 177 n. 8, 104 S.Ct. 944, current empirical evidence suggests that self-represented defendants in state felony proceedings "appear to have achieved higher felony acquittal rates than their represented

Lovin permission to represent himself would not have unduly hindered the fair, efficient, and orderly administration of justice. The record does not, however, contain sufficient evidence to make findings with regard to whether Mr. Lovin decided to represent himself with full knowledge and understanding that he was waiving his right to counsel and of the other consequences of his decision to represent himself on appeal from the denial of his petition for post-conviction relief.

The Court of Criminal Appeals cannot be faulted for the absence of this evidence from the record. Its jurisdiction is appellate only. Tenn.Code Ann. § 16–5–108(a) (1994); *State v. Lane*, 254 S.W.3d 349, 354 n. 4 (Tenn.2008); *State v. Hicks*, 55 S.W.3d 515, 529 (Tenn.2001). Accordingly, it is poorly equipped to hold evidentiary hearings or to make factual findings independent of the facts contained in the appellate record. *See Konvalinka v. Chattanooga–Hamilton County Hosp. Auth.*, 249 S.W.3d 346, 357 n. 21 (Tenn.2008); *Doe v. Bd. of Prof'l Responsibility*, 104 S.W.3d 465, 474 (Tenn.2003). Even if Mr. Kirk had informed the court that Mr. Lovin had discharged him, the court would not have been able to conduct the sort of intensive hearing that would have been required in order to ascertain that Mr. Lovin had knowingly and intelligently waived his right to counsel and that Mr. Lovin knew and fully understood the consequences of his decision to represent himself.

 In circumstances like this case where a prisoner decides to discharge his or her retained lawyer and to represent himself or herself on appeal in a post-conviction proceeding, the Court of Criminal Appeals should promptly remand the case to the trial court with directions to conduct a hearing to ascertain whether the prisoner has knowingly and intelligently waived his or her right to counsel. With appropriate modifications, the questions to be addressed to prisoners who desire to represent themselves in post-conviction proceedings should be similar to the questions used when a person accused of a crime decides to represent himself or herself at trial. *See Smith v. State*, 987 S.W.2d 871, 875, 877–78 (Tenn.Crim.App. 1998).

### IV.

Based on the record before us, we have concluded that the judgment of the Court of Criminal Appeals in this case must be vacated and the case remanded for further proceedings. The January 11, 2007 order of the Court of Criminal Appeals must likewise be vacated. After Mr. Lovin discharged Mr. Kirk, Mr. Kirk had no authority to act on Mr. Lovin's behalf.[17] Therefore, he had no authority to file a brief in Mr. Lovin's case, and the brief must be stricken.

Following our remand of this case, the Court of Criminal Appeals should remand the case to the trial court with directions to conduct a prompt hearing to ascertain whether Mr. Lovin has knowingly and intelligently waived his right to counsel. If, after proper inquiry, the trial court determines that Mr. Lovin has knowingly and

counterparts in that they were less likely to have been convicted of felonies." *Indiana v. Edwards*, 554 U.S. ——, ——, 128 S.Ct. 2379, 2388, 171 L.Ed.2d 345 (2008) (quoting Erica J. Hashimoto, *Defending the Right of Self-Representation: An Empirical Look at the Pro Se Felony Defendant*, 85 N.C.L.Rev. 423, 428 (2007)).

17. When a client discharges a retained lawyer, the lawyer no longer has the authority to act on the former client's behalf without new authorization. Restatement (Third) of the Law Governing Lawyers § 33(2)(b).

intelligently waived his right to be represented by counsel, the trial court shall obtain Mr. Lovin's written waiver of his right to counsel on appeal required by Tenn. Sup.Ct. R. 13 and shall also direct that a supplemental record of the proceedings be filed with the Court of Criminal Appeals. If the trial court determines that Mr. Lovin has not knowingly waived his right to counsel or effectively exercised his right of self-representation, the court shall then, following the procedures required by the applicable statutes and rules, provide Mr. Lovin with a reasonable opportunity to retain a new lawyer or appoint a lawyer to represent Mr. Lovin on appeal in accordance with Tenn. Sup.Ct. R. 13.

If the trial court has determined that Mr. Lovin has appropriately waived his right to counsel and has chosen to represent himself, the Court of Criminal Appeals shall then set a new briefing schedule in accordance with Tenn. R.App. P. 29 and shall direct Mr. Lovin to file his brief. Following the filing of all the briefs, the Court of Criminal Appeals shall proceed to decide the appeal.

The costs of this appeal, except the costs related to the filings by the Tennessee Association of Criminal Defense lawyers, are assessed against the State of Tennessee. Any costs associated with amicus filings in this appeal are assessed against the Tennessee Association of Criminal Defense lawyers for which execution, if necessary, may issue.