Argued and submitted August 25, reversed and remanded with instruction to reinstate charges of aggravated murder October 11, 1989, reconsideration denied January 5, petition for review pending 1990

## STATE OF OREGON,
*Appellant,*

*v.*

## THOMAS CARMAN MALETTA,
*Respondent.*

(CF880309; CA A49687)

781 P2d 350

Brenda J Peterson, Assistant Attorney General, Salem, argued the cause for appellant. With her on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

David E. Groom, Salem, argued the cause for respondent. With him on the brief was Gary D. Babcock, Public Defender, Salem.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

WARREN, J.

## WARREN, J.

Defendant was charged with kidnapping, rape, murder and three counts of aggravated murder. The state appeals the trial court's dismissal of the aggravated murder charges, ORS 138.060(1), for which capital punishment is a possibility. The basis for the dismissal was that defendant was not represented at his preliminary hearing by an attorney qualified under the State Court Administrator's standards to represent indigent defendants in capital or other murder cases.[1] The state argues that the dismissal was not proper, because defendant was not prejudiced by the appointment or the representation. We agree and reverse.

The significant events all occurred between defendant's arrest in Colorado on May 16, 1988, and the filing of the information in the Circuit Court of Umatilla County on June

---

[1] The State Court Administrator's guidelines provide:

"IV. *DEATH PENALTY AND OTHER MURDER CASES*

"An attorney is eligible for appointment as lead counsel in death penalty cases and in other murder cases if he or she:

"1. Has been trying major felony cases for the past five years;

"2. Has demonstrated to persons with knowledge of his or her practice a high level of learning, scholarship, training, experience and ability to provide effective and vigorous representation to defendants charged with a crime for which the death penalty can be imposed including handling cases involving fifteen or more witnesses, and cases involving psychiatric issues and scientific evidence;

"3. Has acted as counsel or co-counsel in at least one murder case which was tried to a jury and which went to a final verdict; and

"4. Demonstrates the above by:

"a. A written statement by the attorney explaining why the attorney feels that he or she has the qualities required to handle a murder case.

"b. Certification from those with knowledge of the attorney's practice indicating that they believe that the attorney should be allowed to defend murder cases, and an explanation why the attorney has the qualities required. Certification must include at least five letters from the following three groups:

"1) Judges before whom the attorney has appeared;

"2) District attorneys or deputies against whom the attorney has tried cases;

"3) Fellow attorneys who are recognized generally among the local bar as criminal trial practitioners and who have knowledge of the attorney's practice.

"5. In order to be appointed co-counsel in death penalty cases or other murder cases, an attorney must satisfy section IV. 1, 2 and 4 above.

"6. The attorney shall not handle more than two capital cases at the same time."

23, a period of 38 days. Because several attorneys were involved in the early stages of the case, and because their involvement is important to the issue before us, we set out the history in detail.

Defendant was returned to Oregon on May 18 and spoke with a Umatilla County Public Defender within an hour after he was lodged in jail. On the same day, District Court Judge Courson appointed Yokom, an attorney qualified to defend capital cases under the State Court Administrator's standards, to represent defendant in the district court proceedings.

In the meanwhile, the Deputy Director of Indigent Defense Services, Cross, a member of the State Court Administrator's staff, began looking for attorneys who were qualified and available to try capital cases. Baker County attorney Smith was under contract with the state to try capital cases and was therefore a possible choice. On Cross's inquiry, Smith expressed an interest in taking the case with Umatilla County attorney Hachler as co-counsel. When Cross learned that Courson had appointed Yokom for the district court proceedings, she called the circuit court judge and advised him that she had located counsel whom he might be interested in appointing when the case reached the circuit court.

Courson told Hachler that he would not appoint either him or Smith to represent defendant. Nevertheless, Hachler, Smith and the state assumed that Smith and Hachler would be appointed when the case reached circuit court. The state discussed the case with them and provided them discovery materials.

On May 20, Yokom represented defendant at the arraignment. Hachler was there and attempted to tell Yokom what motions he should file. On May 23, Smith visited the defendant in jail and discussed the case with him. Later the same day, Yokom visited defendant and learned that defendant wanted to follow Smith's advice rather than his; accordingly, on May 25, Yokom resigned from the case.

On the same day, Courson appointed Baum, who was not qualified under the State Court Administrator's standards to defend capital cases. Although Courson was aware of that fact, he was not concerned, because the appointment was only

for the preliminary hearing and he believed that a new attorney would be appointed when the case reached circuit court. When Smith learned that Baum had been appointed, he immediately advised Baum that the State Court Administrator's office had told him that he would be appointed when the case reached circuit court. Smith and Baum met the next morning and Smith told Baum what motions he wanted filed and provided Baum with examples of them. He also provided Baum with the discovery materials that the state had provided, and they discussed strategy for the preliminary hearing, including the questions that Baum should ask. Baum filed the motions that Smith had suggested and also hired Smith's investigator to begin investigating the case for defendant.

The preliminary hearing was held on June 6. Although Hachler was present, Baum represented defendant and Baum asked all the questions that Smith had suggested. On June 23, the state filed an information in circuit court charging defendant with three counts of aggravated felony murder, kidnapping in the first degree, kidnapping in the second degree and rape in the first degree. Smith and Hachler were appointed on that date to represent defendant on all of the charges. Baum's involvement in the case continued from his appointment on May 25 to June 23. During that time, Baum and Smith both provided some services to defendant, and the investigator continued to work.

At the omnibus hearing in circuit court, defendant moved to dismiss the information, because he had not been represented at the preliminary hearing by an attorney qualified to try capital cases under the State Court Administrator's standards. The circuit court considered the confusion and lack of continuity concerning who would represent defendant and dismissed the three aggravated murder counts. It reasoned:

"Because the penalty of death is at stake, because the defendant is presumed to be innocent until the contrary is shown, because he is constitutionally entitled to effective assistance of counsel and because the statutes provide for the qualifications of counsel in such cases, and these were not allowed, prejudice to the defendant is presumed. It would be too late and of little use to wait until the penalty of death is imposed to determine the full extent of any actual prejudice. This court appreciates that Mr. Baum did a commendable job under the

circumstances, however he told the District Court that he was not qualified and that court said that it did not care. I would suspect that even the most able of our trial lawyers on the civil bench would admit they are not qualified to defend a death penalty case."

The court found that the actions of the district court were egregious.

■ The initial inquiry is whether the district court erred in appointing Baum. If, at arraignment, an accused does not have an attorney, the trial court must, in absence of a waiver, appoint "suitable" counsel. ORS 135.045. Unless the trial court appoints a public defender or an attorney under a contract with the state, the court must select an attorney who "satisfies the standards of eligibility established under ORS 151.430(3)(a)." ORS 151.480.[2] Under ORS 151.430(3), the State Court Administrator has established criteria that an attorney must meet before he can be appointed in a capital or other murder case. In this case, the district court violated ORS 151.480 when it appointed Baum, who did not meet the standards.

■ We consider next whether dismissal was an appropriate remedy for the statutory violation. ORS 151.480 does not provide a remedy for its violation. In other contexts, we have stated the general rule that, in the absence of a statutory requirement, we will not suppress evidence because of a statutory violation. *State v. Whalen,* 90 Or App 18, 750 P2d 1168 (1988); *State v. Jenks,* 43 Or App 221, 602 P2d 681 (1979). The remedy of dismissal with prejudice is more severe than suppression of evidence and requires a greater justification.

---

[2] ORS 151.480 provides:

"When a court or magistrate has the power to appoint counsel to represent an indigent in a proceeding in a circuit, district, county, justice's or municipal court or in an appeal therefrom and the state, a county or a city is required to pay compensation for that representation, and the court or magistrate does not appoint the Public Defender established by ORS 151.280 or counsel who is under contract to provide services for the proceeding or appeal pursuant to ORS 151.010 or 151.460, the court or magistrate shall appoint as counsel:

"(1) An attorney who, in the opinion of the court or magistrate, satisfies the standards of eligibility established under ORS 151.430 (3)(a); or

"(2) An attorney member of a full-time not-for-profit public defender organization that, in the opinion of the court or magistrate, satisfies the standards of eligibility established under ORS 151.430 (3)(b)."

Although the importance of following the statutes must not be minimized, no legitimate policy is served by dismissal of a charge for a statutory violation that did not prejudice the defendant.[3]

It is conceded that Baum's representation of defendant before, and at the time of, the preliminary hearing was competent. The only actual prejudice that defendant claims is that he made statements to other prisoners. Defendant does not specify what those statements were. Furthermore, he does not contend that his attorney did not advise him not to talk to other people. In fact, when the state asked defendant at the omnibus hearing if an attorney had told him not to talk, defendant successfully objected on the ground of the attorney-client privilege. Defendant cannot have it both ways. We will not infer from the fact that defendant talked to others that what he said was prejudicial or that his attorneys had not advised him not to talk. Baum's representation was competent, and Baum was guided from the beginning of his appointment by Smith, a qualified attorney who was appointed when the case reached the circuit court. Defendant was not entitled to have the aggravated murder charges dismissed because of a statutory violation that did not prejudice him.

■ Furthermore, defendant has not shown any constitutional violation. In *Krummacher v. Gierloff,* 290 Or 867, 627 P2d 458 (1981), the Supreme Court rejected a technical approach to determining the adequacy of counsel for constitutional purposes. It stated that the test for adequate assistance of counsel is necessarily general and subjective, and the focus must be on actual performance, not general competence.

> "Lawyers, like other professionals, are not all equally skillful, but the least of us can sometimes rise to a challenge and the best of us can blunder. Thus it is the performance, not the identity, of the defense lawyer which is subject to constitutional scrutiny." 290 Or at 872.

The rule is equally applicable to capital cases. *See Strickland v. Washington,* 466 US 668, 104 S Ct 2052, 80 L Ed 2d 674 (1984). The constitutional guaranties do not depend on

---

[3] A defendant must show some prejudice, even if he has been denied counsel at a preliminary hearing. *Coleman v. Alabama,* 399 US 1, 90 S Ct 1999, 26 L Ed 2d 387 (1970).

whether counsel has met standards. The test is actual performance.

■        The trial court held that prejudice was presumed, because the district court had appointed an attorney who did not meet the State Court Administrator's standards. We disagree. Prejudice is presumed only in those limited circumstances in which the probability of prejudice is high enough to make proof of prejudice unnecessary. *United States v. Cronic,* 466 US 648, 104 S Ct 2039, 80 L Ed 2d 657 (1984). Those circumstances include the denial of counsel and the failure of counsel to subject the state's case to a "meaningful adversarial testing." 466 US at 659. In this case, the probability of prejudice is not high. To hold otherwise would be contrary to the holding of *Krummacher v. Gierloff, supra,* that adequacy of counsel is measured by performance, not credentials.

Reversed and remanded with instructions to reinstate charges of aggravated murder.