No. 580          August 21, 2024          453

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

In the Matter of M. T.,
a Person Alleged to Have Mental Illness.
STATE OF OREGON,
*Respondent,*

*v.*

M. T.,
*Appellant.*

Lane County Circuit Court
23CC01202; A180955

Beatrice N. Grace, Judge.

Argued and submitted March 20, 2024.

Christopher J. O'Connor argued the cause for appellant. Also on the briefs was Multnomah Defenders, Inc.

Ryan Kahn, Assistant Attorney General, argued the cause for respondent. Also on the briefs were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Aoyagi, Presiding Judge, Joyce, Judge, and Jacquot, Judge.

AOYAGI, P. J.

Affirmed.

## AOYAGI, P. J.

Appellant was committed to the custody of the Oregon Health Authority for a period up to 180 days, based on his being unable to meet his basic needs and a danger to others due to a mental disorder. ORS 426.130(1); ORS 426.005(1)(f)(A), (B). On appeal, he raises a single assignment of error, relating to ORS 426.100(3), which recognizes a person's right to be represented in a civil commitment hearing by "suitable legal counsel possessing skills and experience commensurate with the nature of the allegations and complexity of the case." Appellant, who was represented by court-appointed counsel, argues that the trial court "erred by not assigning adequate counsel and erred by not stopping the hearing for the appointment of new counsel when it became apparent that the attorney did not have the requisite skills or experience to serve as suitable legal counsel." Appellant's argument is based entirely on ORS 426.100(3); he has disavowed any claim of constitutionally inadequate assistance of counsel. For the reasons described below, we affirm.

An allegedly mentally ill person has the right to be represented by counsel at a civil commitment hearing. ORS 426.100(2). The right to counsel includes both the right to obtain suitable legal counsel for oneself and the right to have suitable legal counsel appointed by the court in the event of indigency:

"When provided under [ORS 426.100(2)], a person alleged to have a mental illness has the following rights relating to representation by or appointment of counsel:

"(a)  The right to obtain suitable legal counsel possessing skills and experience commensurate with the nature of the allegations and complexity of the case during the proceedings.

"(b)  If the person is determined to be financially eligible for appointed counsel at state expense, the court will appoint legal counsel to represent the person. If counsel is appointed at state expense, payment of expenses and compensation relating to legal counsel shall be made as provided under ORS 426.250.

"(c)   If the person alleged to have a mental illness does not request legal counsel, the legal guardian, relative or friend may request the assistance of suitable legal counsel on behalf of the person.

"(d)   If no request for legal counsel is made, the court shall appoint suitable legal counsel unless counsel is expressly, knowingly and intelligently refused by the person.

"(e)   If the person is being involuntarily detained before a hearing on the issue of commitment, the right under paragraph (a) of this subsection to contact an attorney or under paragraph (b) of this subsection to have an attorney appointed may be exercised as soon as reasonably possible.

"(f)   In all cases suitable legal counsel shall be present at the hearing and may be present at examination and may examine all witnesses offering testimony, and otherwise represent the person."

ORS 426.100(3).

In this case, appellant argues that his court-appointed counsel was not "suitable" under ORS 426.100(3) and that the trial court should have stopped the hearing based on counsel's performance and appointed new counsel. The state responds that appellant did not raise that issue below, that any error under ORS 426.100(3) is not "plain," and that appellant's argument therefore fails.

Before addressing the parties' arguments, we pause to emphasize the nature of appellant's claim of error. We found the opening brief to be ambiguous as to whether appellant was claiming inadequate assistance of counsel, because appellant uses "suitable" and "adequate" inter-changeably and relies largely on counsel's performance to argue that counsel was not suitable. That led us to request supplemental briefing from the parties. In his supplemental brief, appellant clarifies that he is not making an inadequate assistance claim. He explains that we "should not consider this to be a case regarding inadequate assistance of counsel" and that the issue presented on appeal is limited to whether the trial court failed to appoint "suitable" counsel for appellant. We appreciate the clarification and proceed with that understanding.

Having clarified the nature of appellant's claim of error, we next consider preservation. "Generally, an issue not preserved in the trial court will not be considered on appeal." *State v. Wyatt*, 331 Or 335, 341, 15 P3d 22 (2000). Preservation is excused in some circumstances, however, as discussed below. We also always have discretion to review for "plain" errors. ORAP 5.45(1); *see State v. Vanornum*, 354 Or 614, 629, 317 P3d 889 (2013) ("For an error to be plain error, it must be an error of law, obvious and not reasonably in dispute, and apparent on the record without requiring the court to choose among competing inferences.").

The state argues that appellant did not alert the trial court to his counsel's alleged unsuitability and that we should therefore treat his claim of error as unpreserved and review only for plain error. Appellant disagrees. In his opening brief, appellant requested plain-error review, but, in his supplemental brief, he argues that preservation should be excused because an allegedly mentally ill person has no practical ability to challenge counsel's suitability in the trial court.

"Preservation rules are pragmatic as well as prudential." *Peeples v. Lampert*, 345 Or 209, 220, 191 P3d 637 (2008). It is well established that preservation will be excused in some circumstances, particularly where the appellant had "no practical ability to raise an issue." *Id*. ("In some circumstances, the preservation requirement gives way entirely, as when a party has no practical ability to raise an issue."). In the juvenile dependency context, in two cases involving inadequate assistance claims raised by parents for the first time on appeal, the Supreme Court has excused preservation on impracticality grounds. As the court succinctly put it in *T. L.*, "As a practical matter, the identification of an inadequate assistance of counsel claim and the question whether it caused cognizable prejudice to a party are complex legal issues that remain likely to be detected and assessed in the first instance only by competent counsel." *Dept. of Human Services v. T. L.*, 358 Or 679, 701, 369 P3d 1159 (2016); *see also State ex rel Juv. Dept. v. Geist*, 310 Or 176, 184 n 9, 796 P2d 1193 (1990) ("We recognize the reality that it is unlikely that any challenge to the adequacy

of appointed trial counsel will have been preserved in the circuit court. It is neither realistic nor reasonable to expect that a parent's trial counsel will have objected at trial that counsel's advocacy was inadequate.").

For present purposes, given the complicated issues raised by the parties' preservation arguments, we decline to decide whether preservation should be excused in these circumstances. Instead, we assume without deciding that preservation is excused, because it ultimately does not affect our disposition.

Turning to the merits, ORS 426.100(3) recognizes an allegedly mentally ill person's "right to obtain suitable legal counsel" and related right, if financially qualified, to have counsel appointed by the court and paid for by the state. Suitable counsel is described in ORS 426.100(3)(a) as "suitable legal counsel possessing skills and experience commensurate with the nature of the allegations and complexity of the case."

Neither party has identified any existing case law regarding suitability of counsel, in the civil commitment context or otherwise, but some does exist. First, the same suitability standard applies to appointed counsel in post-conviction cases. ORS 138.590(4) requires the circuit court to "appoint suitable counsel" for a financially eligible person seeking post-conviction relief. In that context, we have referred to the suitability requirement in reviewing the denial of motions for substitute counsel. For example, in *Lopez v. Cain*, 331 Or App 666, 673, 547 P3d 821 (2024), we held that the trial court had erred in denying the petitioner's motion for substitute counsel, and we reversed and remanded for appointment of substitute counsel, where counsel "advocated against his client's position [on a *Church* motion], assuming the role of opposing counsel, and therefore was not 'suitable' counsel for purposes of the post-conviction trial."

Second, the legislature has long required administrative standards for appointed counsel. From 1985 to 2001, the State Court Administrator was required to "establish standards of eligibility for *** [a]ppointed counsel

compensated at public expense to represent indigents in the courts of this state or municipal court." *Former* ORS 151.430(3)(a) (1985), *amended by* Or Laws 1987, ch 803, § 10, Or Laws 1995, ch 677, § 2, Or Laws 2021, ch 962, § 109, *repealed by* Or Laws 2001, ch 962, § 115. From 2001 to 2023, the Public Defense Services Commission (PDSC) was required to "[a]dopt policies, procedures, standards and guidelines regarding * * * [p]rofessional qualifications for counsel appointed to represent public defense clients." ORS 151.216(1)(j)(F) (2021); *see* Or Laws 2001, ch 962, §§ 3, 106 (original enactment). The most recent PDSC guidelines are from 2019 and include minimum qualifications for appointed counsel in civil commitment cases. *See Public Defense Services Commission Qualification Standards for Court-Appointed Counsel to Represent Financially Eligible Persons at State Expense*, 5 (revised Dec 19, 2019), *available at* https://www.oregon.gov/opdc/provider/StandardsBP/ AttorneyQualification.docx (accessed Aug 5, 2024). The Oregon Public Defense Commission (OPDC) replaced the PDSC on January 1, 2024, *see* Or Laws 2023, ch 281, § 1, and does not appear to have created new qualification standards at this time.[1]

We addressed the suitability of counsel for appointment in a death-penalty case by reference to the administrative standards in *State v. Maletta*, 98 Or App 643, 781 P2d 350 (1989), *rev den*, 309 Or 522 (1990). In that case, the trial court dismissed three aggravated-murder charges because the defendant "was not represented at his preliminary hearing by an attorney qualified under the State Court Administrator's standards to represent indigent defendants in capital or other murder cases." *Id.* at 645. We reversed, agreeing with the state "that the dismissal was not proper, because defendant was not prejudiced by the appointment or the representation." *Id.* In reaching that conclusion, we explained that ORS 135.045 (1987) requires the

---

[1] The legislature amended ORS 151.216 in 2023, with different amendments to take effect on different dates through mid-2027. As relevant here, the current ORS 151.216 requires OPDC to "[a]dopt policies, procedures, standards and guidelines regarding * * * [t]he appointment of counsel," ORS 151.216(1)(h)(B), and in doing so to adhere to the principle that "[t]he ability, training and experience of appointed counsel must match the nature and complexity of the case to which the counsel is appointed," ORS 151.216(2)(c).

appointment of "suitable" counsel;[2] that *former* ORS 151.480 (1987), *repealed by* Or Laws 2001, ch 962, § 115, requires that appointed counsel meet "the standards of eligibility" created by the State Court Administrator pursuant to *former* ORS 151.430(3)(a) (1987);[3] and that the district court violated *former* ORS 151.480 (1987) by appointing an attorney who did not meet those standards. *Maletta*, 98 Or App at 648; *see also id.* at 645 n 1 (quoting standards). Dismissal was not "an appropriate remedy for the statutory violation," however, given that the defendant had not been prejudiced. *Id.* at 648.

We disagreed with the trial court that prejudice should be "presumed" and instead looked to the facts of the case. *Id.* at 650. The defendant was not claiming inadequate assistance of counsel and had "not shown any constitutional violation." *Id.* at 649. Regarding the latter, we noted that "the test for adequate assistance of counsel is necessarily general and subjective, and the focus must be on actual performance, not general competence." *Id.* "'Lawyers, like other professionals, are not all equally skillful, but the least of us can sometimes rise to a challenge and the best of us can blunder. Thus it is the performance, not the identity, of the defense lawyer which is subject to constitutional scrutiny.'" *Id.* (quoting *Krummacher v. Gierloff*, 290 Or 867, 872, 627 P2d 458 (1981)). In other words, the "adequacy of counsel is measured by performance, not credentials." *Id.* at 650. Because the defendant had not been prejudiced, we concluded that the trial court had erred in dismissing the charges to remedy the violation of *former* ORS 151.480 (1987) and reversed the dismissal ruling. *Id.*

Returning to the present case, we conclude that appellant has not made out a viable claim for reversal of his

[2] ORS 135.045 (1987) has been amended over time and no longer uses the term "suitable." *Compare* ORS 135.045 (1987), *amended by* Or Laws 1989, ch 171, § 16; Or Laws 1989, ch 1053, § 1a; Or Laws 1991, ch 790, § 11; Or Laws 2001, ch 472, § 1; Or Laws 2001, ch 962, § 24 (providing for the appointment of "suitable counsel"), *with* ORS 135.045 (2024) (providing for the appointment of "counsel").

[3] Under *former* ORS 151.480 (1987), "[u]nless the trial court appoints a public defender or an attorney under a contract with the state, the court must select an attorney who 'satisfies the standards of eligibility established under [*former*] ORS 151.430(3)(a).'" *Maletta*, 98 Or App at 648 (quoting *former* ORS 151.480(1) (1987)).

commitment. The trial court was required to appoint suitable counsel to represent appellant, *i.e.*, counsel "possessing skills and experience commensurate with the nature of the allegations and complexity of the case." ORS 426.100(3)(a). Appellant argues that the court appointed unsuitable counsel in violation of ORS 426.100(3). However, the record is silent as to counsel's skills and experience at the time of appointment. Without any information regarding counsel's qualifications, we cannot conclude on this record that the court erred in making the appointment.

Furthermore, even if appellant could establish that it was error to appoint counsel, because counsel lacked skills and experience commensurate with the nature of the allegations and complexity of the case, appellant would have to show that the error was prejudicial. As in *Maletta*, we would not reverse a civil commitment based on the appointment of counsel who was unsuitable on paper, in terms of skills and experience, absent proof of resulting prejudice to the appellant in the actual proceeding. Here, appellant argues that counsel underperformed, but he expressly disclaims constitutionally inadequate assistance of counsel. It is unclear, at best, that the existing record would be sufficient to establish prejudice flowing from counsel's appointment.

That leaves appellant's argument that the trial court should have stopped the commitment hearing and appointed substitute counsel "when it became apparent that the attorney did not have the requisite skills or experience to serve as suitable legal counsel." We are unpersuaded. It is unclear under what circumstances, if any, a trial court would be obligated to *sua sponte* substitute counsel in a civil commitment proceeding based on counsel becoming "unsuitable" in the course of the proceeding. In the post-conviction context, we have described counsel who takes an adversarial position to the client during the proceeding as "unsuitable." *Lopez*, 331 Or App at 673. By analogy, it is possible that a court would be required to substitute counsel in a civil commitment proceeding, perhaps even *sua sponte*, if counsel took an adversarial position to the client, revealed a conflict of interest, or otherwise created or revealed a circumstance that made it untenable for counsel to continue

representing the client. But nothing of that nature occurred in this case. Alleged poor performance short of constitutional inadequacy does not require *sua sponte* substitution of counsel as unsuitable.

Accordingly, we reject appellant's argument that the trial court appointed unsuitable counsel in violation of ORS 426.100(3). We also reject his argument that the court should have stopped the hearing to appoint substitute counsel based on counsel's allegedly poor—but not constitutionally deficient—performance. In doing so, we recognize the inherent difficulties of challenging appointed counsel's qualifications or performance for the first time on appeal, when the record will rarely be developed in a way suited to the task. We also recognize that civil commitments are unique in that, by the time of appeal, the commitment is inevitably over, and it is at best unclear whether the commitment hearing could be held again with different counsel. Finally, we recognize that it remains an open question in Oregon whether (and, if so, how) an allegedly mentally ill person may raise a claim of inadequate assistance of counsel in a civil commitment proceeding.[4] All of those realities lead to a difficult situation for appellate counsel. Nonetheless, we must apply the law as it exists, based on the arguments that have been made, and in this case that leads us to conclude that the judgment of commitment should be affirmed.

Affirmed.

---

[4] In the termination-of-parental-rights (TPR) context, the Supreme Court has held that a parent's statutory right to counsel implicitly includes the right to adequate counsel, *Geist*, 310 Or at 185, and that such right "would 'prove illusory' without a procedure to vindicate" it. *T. L.*, 358 Or at 685-86 (quoting *Geist*, 310 Or at 185). However, in the post-conviction context, we have refused to consider inadequate assistance claims, distinguishing *Geist* based on the "fundamental differences between the nature of [TPR] and post-conviction proceedings." *Miller v. Baldwin*, 176 Or App 500, 507-08, 32 P3d 234 (2001); *see also, e.g.*, *Stokes v. Cain*, 306 Or App 473, 479, 475 P3d 110 (2020), *rev den*, 367 Or 535 (2021) (a petitioner's claim "that his post-conviction trial lawyer performed ineffectively *** is not a cognizable basis for reversing or setting aside the post-conviction court's decision"). Shortly after the *Miller* decision, this court, sitting en banc, split 5-5 on whether to consider an inadequate assistance claim in a civil commitment proceeding, as relevant to allowing a late appeal. *State v. S. G. L.*, 177 Or App 715, 33 P3d 1023 (2001). We have not revisited that issue since *S. G. L.* and do not do so in this case, because appellant is not claiming inadequate assistance.