302 October 22, 2025 No. 910

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

In the Matter of M. C.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

H. C.,
*Appellant.*

Douglas County Circuit Court
23JU02968; A187206

Ann Marie Simmons, Judge.

Submitted July 28, 2025.

Shannon Storey, Chief Defender, Juvenile Appellate Section, and Elena C. Stross, Deputy Public Defender, Oregon Public Defense Commission, filed the brief for appellant.

Dan Rayfield, Attorney General, Benjamin Gutman, Solicitor General, and E. Nani Apo, Assistant Attorney General, filed the brief for respondent.

Before Aoyagi, Presiding Judge, Egan, Judge, and Pagán, Judge.

EGAN, J.

Affirmed.

**EGAN, J.**

In this juvenile dependency case, mother appeals from the permanency judgment in which the juvenile court changed her child's permanency plan from reunification to adoption. In mother's two assignments of error, we are asked to decide two interrelated questions: (1) whether the juvenile court erred in its determination that the Oregon Department of Human Services (ODHS) made reasonable efforts to reunify M with mother, and (2) whether the court erred in its judgment changing the permanency plan from reunification to adoption. Answering those questions in turn requires us to determine whether, as ODHS argues, ODHS may focus its ameliorative efforts toward reunification on one of two jurisdictional bases, based on its determination that the two bases are so connected that curing one depends on first curing the other. For the reasons that follow, we conclude that it may. Following that determination, we further conclude that the record supports the juvenile court's finding that ODHS made reasonable efforts in this case and that it did not err in changing the plan from reunification to adoption. Accordingly, we affirm.

## BACKGROUND

This case began in June 2023, when ODHS placed M in protective custody as an infant and initiated a dependency action under ORS 419B.100(1)(d). The protective custody order followed reports that mother was drinking excessively, breastfeeding M after having consumed alcohol, and getting into physical altercations in the presence of M. On July 31, 2023, the Douglas County Circuit Court entered a judgment of jurisdiction and disposition bringing the child under the dependency jurisdiction of the juvenile court on two bases: (1) mother's alcohol abuse interfered with her ability to safely parent the child, and (2) mother's volatile behavior presented a safety threat to the child. The juvenile court put in place a permanency plan of reunification. That plan was reviewed and maintained by a permanency judgment entered July 22, 2024.

The relevant facts in the record are undisputed. In August 2023, after regularly and excessively consuming

alcohol for a period of around ten years, mother began inpatient substance abuse treatment at Willamette Family Behavior Health. While there, ODHS placed M back into mother's care with a safety plan in place. ODHS and the staff at Willamette Family found that mother was attentive and her bond with M was strong while in the program. Accordingly, in November 2023, upon completion of the 90-day program at Willamette Family, mother and M moved in with mother's mother with a safety plan. Four months later, in March 2024, mother was arrested for DUII while driving with M and two of her other children in the vehicle, and she later pleaded guilty. ODHS then removed M from mother's care for the second time.

In June 2024, mother again began inpatient substance abuse treatment at Willamette Family. Treatment included parenting classes, grief counseling, and one-on-one therapy. ODHS placed M back into mother's care at Willamette Family in August 2024, again with a safety plan in place. In September 2024, upon completion of the 90-day program, mother moved with M into Sponsors Housing, a sober living facility. While living there, mother began an intensive outpatient program through Willamette Family but then discontinued the program against staff advice. Soon thereafter, Sponsors Housing discharged mother for suspected alcohol use and failing to properly supervise M. Sponsors Housing employees discovered empty alcohol bottles in mother's room. At that time, mother moved into another facility without informing ODHS, preventing ODHS from performing an inspection to ensure safe conditions for M.

In December 2024, after drinking alcohol, mother and her romantic partner took M and two of mother's other children to a movie theater. While at the theater, mother and her partner got into a physical altercation, during which the partner struck mother, destroyed her phone, and took her car, leaving mother, M, and the other children at the theater. Following that incident, ODHS removed M from mother's care for the third time and placed M with a resource parent that has been in M's life since infancy, where he has since remained.

From December 2024 to March 2025, mother moved to an undisclosed location near Bend, making it

difficult for ODHS to communicate with her. Mother showed up seemingly intoxicated to scheduled visits with M and missed other visits altogether. The permanency caseworker assigned to the case had difficulty connecting mother with resources because the department was unable to locate her. ODHS provided mother with bus tickets and other transportation assistance, but mother often did not use them. Mother expressed interest in returning to Sponsors Housing, rather than the services the caseworker suggested, but when mother received an offer to do so, she declined.

On March 7, 2025, following trial, the juvenile court issued a permanency judgment changing M's permanency plan from reunification to adoption. In issuing the ruling, the juvenile court determined that ODHS had made reasonable efforts toward reunification and that mother's continued alcohol use required the change of plan because ODHS could not safely place M in mother's care within a reasonable period of time from date of trial. In its ruling, the juvenile court stated:

> "THE COURT:    I am not making a finding that [ODHS] did not make reasonable efforts because at some point it is not up to [ODHS]. At some point it is up to the parent to change their lifestyle, to enter into, to, to sort of embrace recovery if the substance abuse problem is an issue.
>
> "You know, we haven't even gotten to volatile behavior because we've never gotten past substance use in this case. And that's, that, you know, to some extent the two appear to go hand in hand but it suggests that there are other issues that should and could be dealt with through mental health therapy and counseling. And we've never made it that far.
>
> "* * * * *
>
> "So, I find that [ODHS] has made reasonable efforts. I find that it is at this point in time not a situation in which I can place the child with the parent or that [ODHS], more precisely, can place the child with the parent. I do not find that within a reasonable period of time that that is going to occur.
>
> "And so, the plan should be changed to adoption."

On appeal, mother contends that the juvenile court erred in (1) finding that ODHS made reasonable efforts to facilitate reunification, particularly as related to the volatile behavior jurisdictional basis; and (2) changing the permanency plan from reunification to adoption. ODHS contends that mother failed to preserve her argument that the juvenile court erred in its reasonable efforts finding as to the volatile behavior jurisdictional basis. Mother disagrees but alternatively requests plain-error review. ODHS further argues that, because the two jurisdictional bases are intimately connected, efforts toward ameliorating volatile behavior would have been futile if the mother was not first able to maintain sobriety. Therefore, ODHS argues, the juvenile court did not err in its ruling that ODHS made reasonable efforts toward reunification, nor in changing the permanency plan from reunification to adoption.

As explained below, we conclude that because the record contains sufficient evidence to prove by a preponderance of the evidence that ODHS made reasonable efforts toward reunifying M with mother that the juvenile court did not err in its reasonable-efforts determination. Therefore, we also conclude that the juvenile court did not err in changing the permanency plan from reunification to adoption.

## STANDARD OF REVIEW

Mother has not requested *de novo* review, and we do not provide it. *See* ORS 19.415(3) ("Upon an appeal in an equitable action or proceeding other than an appeal from a judgment in a proceeding for the termination of parental rights, the Court of Appeals, acting in its sole discretion, may try the cause anew upon the record or make one or more factual findings anew upon the record."). We are therefore bound by the juvenile court's factual findings as to what efforts ODHS has made toward reunification, so long as there is evidence to support them. *Dept. of Human Services v. K. G. T.*, 306 Or App 368, 370, 473 P3d 131 (2020). We assume that the juvenile court found all explicit or implicit facts necessary to its ruling. *Dept. of Human Services v. Y. B.*, 372 Or 133, 151, 546 P3d 255 (2024). Whether efforts were "reasonable," as required by ORS 419B.476(2)(a) before there may be a change of permanency plan, is a question of law that

we review for legal error. *Dept. of Human Services v. C. H.*, 373 Or 26, 48-49, 559 P3d 395 (2024).

## ANALYSIS

As a preliminary matter, ODHS raises a preservation objection to mother's argument that the court erred in finding ODHS's actions reasonable because ODHS made little effort aimed specifically at the volatile behavior jurisdictional basis. We assume without deciding that the issue is preserved because it does not affect our disposition. *See Stop B2H Coalition v. Dept. of Energy*, 370 Or 792, 812, 525 P3d 864 (2023) (declining to decide a preservation issue when agreeing with respondents that petitioner's argument failed on the merits); *see also State of Oregon v. M. T.*, 334 Or App 453, 458, 556 P3d 1059 (2024) (assuming preservation excused when there was no effect on the court's disposition).

In exercising dependency jurisdiction, juvenile courts in Oregon are subject to a "strong preference that children live in their own homes with their own families." ORS 419B.090(5); *Dept. of Human Services v. C. S. C.*, 303 Or App 399, 404, 463 P3d 582 (2020). When a child's permanency plan is reunification of the family, ODHS must make reasonable efforts under the circumstances "to give parents a full and fair opportunity to remediate the bases for jurisdiction to become at least minimally adequate parents." *C. H.*, 373 Or at 50. If ODHS requests that a child's plan be changed from reunification to adoption, the juvenile court must determine whether (1) ODHS has made reasonable efforts and (2) the parent has made sufficient progress to make it possible for the child to return home, with the child's health and safety held as paramount concerns. *See* ORS 419B.476(2)(a) (governing permanency hearings when the plan is reunification).

ORS 419B.476(2)(a) states that ODHS must make reasonable efforts "*to make it possible for a child to safely return home.*" (Emphasis added.) The Supreme Court recently interpreted that statute and, in so doing, defined "reasonable efforts" to be those which, considering the totality of the circumstances and reviewed in light of the jurisdictional bases, are "reasonably calculated to assist parents" in

making sufficient progress toward safe reunification. *C. H.*, 373 Or at 49-50. The Court further explained that "the obligation that DHS make reasonable efforts coexists with the requirement that parents make sufficient progress." *Id.* at 50 (internal quotation marks omitted). To support a reasonable efforts determination, ODHS must show that it has "provided a child's parents a reasonable opportunity to demonstrate their ability to adjust their conduct and become minimally adequate parents." *C. S. C.*, 303 Or App at 405 (internal quotation marks omitted).

Here, mother relies on *Department of Human Services v. T. F.*, 331 Or App 682, 548 P3d 510 (2024), to argue that ODHS's efforts must individually target each basis for dependency jurisdiction for a juvenile court to find efforts reasonable. In that case, we reversed a juvenile court's reasonable efforts determination, largely because the record showed that ODHS had inadequately addressed a jurisdictional basis that had been added by the juvenile court subsequent to the initial jurisdictional judgment. *Id.* at 691-92. However, the facts were much different in that case than in the one before us. There, ODHS was attempting to reunify a child with the estranged father who lived in another state. *Id.* at 689-91. Initially, ODHS was arranging for virtual meetings and trying to orchestrate an in-person meeting as a way of establishing consistent communication and developing a parent-child bond. *Id.* at 689-91. After the father missed a flight that ODHS had helped book so that the father and child could meet in person, ODHS filed an amended petition raising concerns about father's impulse control and behavior in the presence of the child, a deficit in emotional attunement with the child, and a failure to keep in regular contact with the child, as well as a failure to recognize the negative impacts all of this was having on the child. *Id.* at 687. In response, the juvenile court added a jurisdictional basis requiring ODHS to arrange for a psychological and mental health evaluation of the father, indicating that the evaluation was an unequivocal precondition to reunification. *Id.* at 687, 692. We reversed the juvenile court's reasonable-efforts determination because the record showed that ODHS's efforts to accomplish that unequivocal precondition were insufficient, even when considered

alongside prior efforts to build the parent-child relationship. *See id.* at 692 ("Given the court's unequivocal conditioning of any reunification therapy on a psychological evaluation, the absence of a referral for such an examination is significant.").

The case before us is more similar to *Department of Human Services v. S. W.*, 267 Or App 277, 340 P3d 675 (2014). In that case, there were two bases for dependency jurisdiction from the outset: (1) the father's substance and alcohol abuse and (2) the fact of the father's incarceration. *Id.* at 280. The father was later released from incarceration but subsequently reincarcerated. Following reincarceration, ODHS had made little efforts to maintain communication with the father over a period of 33 months. *Id.* at 289-90. However, prior to reincarceration, the father had repeatedly failed to respond to significant efforts made by ODHS to attempt to ameliorate the substance abuse jurisdictional basis and establish a healthy and safe parent-child relationship. *Id.* at 290-91. ODHS set forth a similar argument to the one they are making now. ODHS argued that, looking at the totality of the circumstances, efforts toward communication after the father's reincarceration would have been ineffective at meeting the goal of safe reunification because the father had been unable to achieve and maintain sobriety despite ODHS's efforts. *Id.* at 284, 289-90. Applying a cost-benefit style analysis, looking at the totality of the circumstances and ODHS's overall efforts, we found that the juvenile court did not err in its reasonable efforts determination because the lack of communication with the father while he was incarcerated would have had little appreciable effect on ODHS's ultimate objective—safe reunification of parent and child—given ODHS's substantial efforts prior to incarceration and the father's failure to make any progress. *Id.* at 293-95.

Comparing and contrasting *T. F.* with *S. W.*, we can distill a larger principle—namely that ODHS need not always address each jurisdictional basis individually, at least at the same time. ODHS has a responsibility to attempt the safe reunification of parents with their children by making reasonable efforts calculated to assist parents in becoming minimally adequate parents. Such efforts will

inevitably arise out of the jurisdictional bases that the juvenile court identified, as those bases form what the court determined were barriers to minimally adequate parenting skills and a safe environment for the child. *See C. H.*, 373 Or at 50 ("Efforts are reasonable when the agency has taken appropriate steps under the circumstances to give parents a full and fair opportunity to remediate the bases for jurisdiction to become at least minimally adequate parents."); *see also T. F.*, 331 Or App at 689 ("[T]he reasonableness of ODHS's efforts is measured through the lens of the adjudicated bases for jurisdiction." (Internal quotation marks omitted.)). However, that responsibility does not require a rigid accounting of each of ODHS's efforts per each jurisdictional basis when one basis is significantly derived from another.

When multiple jurisdictional bases are interrelated such that one arises out of another, ODHS may focus efforts on the more foundational basis. But when the bases are less connected, and independently necessary to successful reunification, ODHS typically needs to make efforts directed at each separately. Ultimately, whether ODHS's efforts are reasonable will depend on the totality of circumstances of the case, in light of all of the existing bases for jurisdiction, with the benchmark being that ODHS's efforts must have given the parents a "genuine and fair opportunity" to make the requisite progress to allow for safe reunification. *C. H.*, 373 Or at 50-51.

Applying that analysis to the case before us, we conclude that the juvenile court did not err in determining on this record that ODHS made reasonable efforts toward M's reunification with mother and that mother made insufficient progress for reunification to occur. ODHS provided ongoing safety planning and attempted to connect mother with substance abuse and mental health counseling opportunities, both when mother was undergoing inpatient treatment at Willamette Family and when living at home, and in Sponsors Housing. Despite ODHS's efforts, mother has been unable to maintain sobriety. Mother has twice completed a 90-day in-patient rehabilitation program, each time followed by relapse. Mother's relapses into alcohol consumption have

led to neglectful care of M, driving under the influence of an intoxicant with M and his juvenile siblings in the vehicle, and exposing M to multiple violent encounters between mother and her romantic partners. Those incidents have undeniably and repeatedly risked the health and safety of M. Given mother's insufficient progress in achieving sobriety and ODHS's assessment that mother's volatile behavior derived from her alcohol abuse, it was reasonable for ODHS to continue to focus its efforts on the alcohol abuse jurisdictional basis.

Viewing the record under the totality of circumstances, we conclude that the juvenile court did not err in determining that ODHS made reasonable efforts toward reunification and that, at the time of trial, mother's progress was insufficient to make it possible for M to safely return home. Accordingly, we also conclude that the juvenile court did not err when it determined that the appropriate next step was to change the dependency plan from reunification to adoption.

Affirmed.