IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs August 19, 2025

**RICHARD E. REED v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Knox County**
**No. 115882   G. Scott Green, Judge**

_____

**No. E2024-01111-CCA-R3-PC**

_____

Petitioner, Richard E. Reed, appeals as of right from the Knox County Criminal Court's denial of his petition for post-conviction relief, wherein he challenged convictions for possession with intent to sell 0.5 grams or more of cocaine in a drug-free school zone; possession with intent to deliver 0.5 grams or more of cocaine in a drug-free school zone; possession with intent to sell 0.5 grams or more of cocaine within a drug-free childcare zone; possession with intent to deliver 0.5 grams or more in a drug-free childcare zone; possession of a firearm during the commission of a dangerous felony; and unlawful possession of a weapon by a convicted felon, for which the trial court imposed an effective twenty-year sentence. On appeal, Petitioner asserts that he received ineffective assistance of appellate counsel for failure to include an offer-of-proof transcript in the appellate record; that the trial court erred by denying his motion to suppress; and that he was denied due process because he was not permitted to testify or call trial counsel as a witness at the post-conviction hearing. After a thorough review of the record, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROBERT L. HOLLOWAY, JR., J., delivered the opinion of the court, in which JOHN W. CAMPBELL, SR., and MATTHEW J. WILSON, JJ., joined.

Richard E. Reed (on appeal), Mountain City, Tennessee, pro se; J. Liddell Kirk (at post-conviction hearing), Knoxville, Tennessee, for the appellant, Richard E. Reed.

Jonathan Skrmetti, Attorney General and Reporter; Ronald L. Coleman, Senior Assistant Attorney General; Charme P. Allen, District Attorney General; and Chris Scruggs, Assistant District Attorney General, for the appellee, State of Tennessee.

# OPINION

## Factual and Procedural Background

This court summarized the underlying facts of this case in the direct appeal as follows:

> This case arises from a July 5, 2011 warrantless search of the apartment shared by [Petitioner] and Donna Garrett and the seizure of evidence found during the search. [Petitioner] filed a pretrial motion to suppress the seized evidence, alleging that the warrantless search was unconstitutional. [Petitioner] argued that neither he nor Ms. Garrett consented to the search and that although Ms. Garrett's daughter, Junisha[1] Garrett, consented to a search, Junisha was without legal authority as a minor to consent. [Petitioner] asserted that all evidence obtained during the search should be suppressed as fruit of the poisonous tree.
>
> . . . .
>
> At the suppression hearing, Knoxville Police Officer Jeff Damewood testified that on July 5, 2011, he responded to the scene of a reported attempted robbery and a shooting near the apartment shared by [Petitioner] and Ms. Garrett. Officer Damewood stated that witnesses to the robbery and shooting identified a house that the suspects entered. Officer Damewood said that the house contained two apartments, one on the first floor and one on the second floor. Officer Damewood said that he first entered the first floor apartment, that it was empty, and that he knocked on the door to the upstairs apartment. Officer Damewood stated that two women answered the door, that the women said they were alone in the apartment, and that he asked the women if he could search the apartment to look for the suspects. Officer Damewood said that the women consented to the search and that he and other officers entered the apartment.
>
> Officer Damewood testified that he searched the master bedroom, that he entered the bedroom closet, and that he saw an open box of "baggies" on a shelf. Officer Damewood stated that he could see inside the box and that one of the baggies contained a white substance, which he thought was crack cocaine. Officer Damewood said that he did not touch the box or any of the baggies and that he continued searching the master bedroom for the suspects.

---

[1] Because Ms. Garrett and Junisha Garrett have the same surname, we refer to Junisha Garrett by her first name for clarity.

Officer Damewood stated that the suspects were not inside the apartment. Officer Damewood said that he told the supervising officer at the scene, Officer Coker, about the baggies inside the master bedroom closet.

Officer Damewood testified that Ms. Garrett rented the apartment and that Ms. Garrett arrived home as the search for the suspects ended. Officer Damewood stated that Ms. Garrett said she shared the apartment and the master bedroom with [Petitioner] and that Ms. Garrett consented to a subsequent search of the apartment.

Officer Damewood testified that he reentered the master bedroom closet and that he seized the box of baggies. Officer Damewood stated that he found a gun, cash, ammunition, and a second box of baggies inside a shoebox in the closet. Officer Damewood stated that he found a plate containing white residue and razor blades under the bed and that he found [Petitioner]'s driver's license and offender identification card on a bedside table.

Officer Damewood testified that officers saw [Petitioner] in an alleyway near the house and arrested him. Officer Damewood stated that he did not know [Petitioner] lived in the apartment before entering and that he learned [Petitioner] was on probation after finding [Petitioner]'s offender identification card.

. . . .

Shondia Grimes testified for the defense that she was Ms. Garrett's cousin and that [Petitioner] was Ms. Garrett's boyfriend. Ms. Grimes stated that she was in the apartment with Junisha and that Junisha was [] fifteen or sixteen at the time. Ms. Grimes said she heard a knock at the door, that she and Junisha answered the door, and that she saw police officers with their guns drawn standing outside. Ms. Grimes stated that the officers said they were looking for suspects from a shooting and asked if anyone was inside the apartment. Ms. Grimes stated that she told the officers the suspects were not in the apartment but that the officers asked if they could search the apartment. Ms. Grimes said that she told the officers she did not live in the apartment, that she could not consent to a search, and that the officers eventually went inside the apartment. Ms. Grimes stated that she did not know if Junisha allowed the officers inside.

Following the hearing, the trial court denied [Petitioner]'s motion to suppress. The court found that Junisha consented to the initial search and

that no legal authority showed that a "teenage person cannot give permission to search or enter an apartment." The court found that after Officer Damewood observed what he believed was crack cocaine in plain sight, officers obtained consent from Ms. Garrett for an additional search. The court determined that the searches were reasonable under the totality of the circumstances.

At a later date, [Petitioner] renewed his motion, requesting permission to present the testimony of Junisha. At this time, the trial court judge who denied [Petitioner]'s initial motion to suppress had retired. The following exchange occurred between the subsequent trial court judge and [Petitioner]'s trial counsel:

> THE COURT: I'm going to respectfully deny your motion, [Counsel] . . . . [I]f you want to build your record and make an offer of proof, I'm sure my court reporter would let you put that witness on and solicit what—and elicit what that witness would testify to. But I think the General is correct if the motion has been heard, the law of the case is that the search is good, and I'm not going to reopen it. Okay.
>
> [Counsel]: I understand. But I would like the opportunity to tender [Junisha's] testimony.
>
> THE COURT: I'll do that. *I won't be in here when that happens*, but if you want to talk to [the court reporter], I'm sure she would accommodate you, as long as you're not too long with it. (Emphasis added.)

Junisha testified that she lived in the apartment with Ms. Garrett and [Petitioner] and that she was in the apartment with Ms. Grimes on July 5, 2011. Junisha stated that she heard a knock at the door, that "more than five" officers were at the door, that the officers said they were looking for suspects, and that she told the officers she and Ms. Grimes were alone. Junisha said that the officers asked whether she lived in the apartment and that she told the officers she lived there with her mother. Junisha stated that the officers asked to enter the apartment, that Ms. Grimes did not give the officers permission and that she told the officers "[she] was going to call [her] mom." Junisha said that the officers asked her and Ms. Grimes to stay on the porch and that the officers went inside the apartment. Junisha stated that she was scared and that she and Ms. Grimes were not allowed to leave.

- 4 -

Junisha testified that she did not consent to the officers entering the apartment, that she only said she would "call [her] mom," and that the officers had completed the search by the time Ms. Garrett arrived. Junisha stated that she was not related to [Petitioner], that [Petitioner] had lived in the apartment since 2009, and that [Petitioner] had stayed in the apartment "every night." Junisha said that she knew [Petitioner] was on probation, that she did not know the house was subject to a search at any time because [Petitioner] lived there, and that she did not know [Petitioner] owned a gun.

The trial court entered an order denying [Petitioner]'s motion to suppress after the defense presented Junisha's testimony.

. . . .

[Officer Damewood testified consistently with his suppression hearing testimony regarding his initial interaction with Ms. Grimes and Junisha, the drug-related items he saw in plain view, and Ms. Garrett's later consent to search the apartment.]

. . . .

Knoxville Police Officer Greg Coker testified that after he arrived in the apartment, Officer Damewood told him about the crack cocaine found during the initial search. Officer Coker stated that based on his experience, it appeared that the crack cocaine was packaged for sale. Officer Coker said that he observed [Petitioner] in a patrol car wearing Nike shoes and that the shoes appeared to be from the same shoebox found inside the master bedroom closet.

Officer Coker testified that Ms. Garrett "also resided in the house with [Petitioner]" and that Ms. Garrett pleaded guilty to facilitation of distribution of cocaine. Officer Coker testified that Ms. Garrett consented to an additional search of the apartment. Officer Coker stated that Ms. Garrett and [Petitioner] shared the master bedroom, that they were both criminally charged, and that based on the location of the evidence, he believed both [Petitioner] and Ms. Garrett were involved in the crime.

Upon questioning by the trial court, Officer Coker testified that he arrived in the apartment while officers were searching for the suspects but that he did not search the master bedroom until Ms. Garrett consented. Officer Coker said that both male and female clothing were in the master bedroom closet.

Tennessee Bureau of Investigation (TBI) Special Agent John Scott testified that he analyzed the substance contained in one of eight baggies, that the substance tested positive for cocaine base, and that it weighed 1.98 grams. Special Agent Scott stated that he weighed the other seven baggies and that they had a combined weight of 13.05 grams, which included the substance and packaging material.

Donna Roach testified that she was employed by the City of Knoxville Geographic Information System as a map maker. Ms. Roach stated that she created a map showing the location of [Petitioner]'s apartment and that the apartment was located within 1000 feet of three daycare centers and one school.

. . . .

Kayla Reed, [Petitioner]'s niece, testified . . . . that [Petitioner] had been living with Ms. Garrett for a few months before July 2011 but that he lived in her home on July 5, 2011.

Upon questioning from the trial court, Ms. Reed testified that [Petitioner] possessed his wallet while staying in her home. On redirect examination, Ms. Reed testified that [Petitioner]'s belongings were still in her home and that [Petitioner] was wearing black Nike shoes on the night he came to her home.

Erin Monroe testified for the State on rebuttal that she was required to monitor [Petitioner]'s residency. [Petitioner] reported living with Ms. Garrett in the apartment on June 7, 2011. Ms. Monroe stated that she last visited [Petitioner] at the apartment on June 15, 2011, and that his belongings were present. Ms. Monroe said that [Petitioner] was required to inform her of address changes and to ask for permission to move and that [Petitioner] never notified her of an address change or requested permission to move before the July 5, 2011 search.

*State v. Reed*, No. E2017-00114-CCA-R3-CD, 2018 WL 1040176, at *1-4 (Tenn. Crim. App. Feb. 22, 2018), *perm. app. denied* (Tenn. July 18, 2018).

Relevant to this appeal, this court affirmed the trial court's denial of the motion to suppress, concluding that "whether a juvenile can consent to a warrantless search of a parent's home is not determinative in this case" because "none of the evidence used to convict [Petitioner] was seized until Ms. Garrett consented to a warrantless search of the

apartment she shared with [Petitioner]." *Id.* at *5-6. Our supreme court denied Petitioner's application for permission to appeal on July 18, 2018.

Thereafter, Petitioner filed a pro se petition for post-conviction relief, asserting (1) that he received ineffective assistance of trial counsel because counsel failed to inform the successor trial judge "that the officers used [Junisha's] consent to enter the residence," which led the successor judge not to hear Junisha's testimony and reconsider the denial of the motion to suppress; (2) that the trial court denied Petitioner due process by denying the motion to reconsider the motion to suppress without hearing Junisha's testimony; and (3) that appellate counsel provided ineffective assistance by "not introducing the Offer of Proof [transcript of Junisha's testimony] into the evidence" as part of the appellate record.

On August 23, 2019, the post-conviction court found that Petitioner had presented a colorable claim for relief and appointed post-conviction counsel. The preliminary order instructed post-conviction counsel to file an amended petition or a notice that no amended petition would be filed and instructed the State to file an answer. The record does not contain the State's answer, an amended petition, or a notice that no amended petition would be filed.

A post-conviction hearing was held on May 18, 2023. At the hearing, post-conviction counsel announced that no witnesses would be presented and that Petitioner wished to present "a very narrow issue regarding the [c]ourt's review." The following exchange occurred:

> [COUNSEL]: This is just going to be the question of whether . . . if the [c]ourt had considered [Junisha's] testimony and reconsidered the ruling that [the first trial judge] previously made with regard to the suppression, would that have changed the [c]ourt's mind and convinced the [c]ourt to reconsider the suppression issue before the case went to the Court of Criminal Appeals. The Court of Criminal Appeals has already upheld the prior rulings on suppression. So the question is if . . . Your Honor had revisited that based on her testimony, would that have convinced Your Honor to make a different ruling.
>
> . . . .
>
> The [c]ourt allowed her to put testimony in the record but . . . although the [c]ourt put down a written ruling, the ruling simply reaffirmed [the] prior ruling I think without taking [Junisha's] testimony into consideration because she didn't testify at the initial suppression hearing.
>
> . . . .

[THE COURT:] All right. Let's make sure that with [Petitioner] present we're getting . . . the parameters of what we're doing here laid out.

If I'm informed correctly, [post-conviction counsel], what you and [Petitioner] have chosen to do is to limit and narrow the issue within this post-conviction [proceeding] to the singular issue of alleging that counsel was ineffective for the failure to – explain that to me again[.]

[COUNSEL]: [Trial] [c]ounsel put testimony in the record that should've gotten a ruling from the trial court . . . . [A]nd the trial court, we're arguing also, should have considered that evidence to reconsider the prior ruling on the motion to suppress.

Post-conviction counsel argued that a possibility existed that, had the trial court considered Junisha's testimony that she denied the officers consent to enter the apartment, the trial court might have accredited this testimony and granted the motion to suppress. Counsel argued that, thereafter, the trial court's findings of fact would have been given deference on direct appeal.

Post-conviction counsel further argued that Petitioner's due process rights were violated "by not having that testimony considered and the suppression issue reconsidered prior to trial." Counsel averred that the issue was not previously determined because "if the trial court had made a different ruling prior to appeal, then the appellate court's review would be based on deference to the trial court's findings of fact in granting the suppression motion[.]" The post-conviction court stated that it would review Junisha's testimony and the suppression hearing transcript and that it would issue a written order after it received the transcripts.

The following exchange occurred:

THE COURT: All right. Well, get me those transcripts. It's going to be a while before I can . . . get the order down but I'll get an order down.

I'm assuming you want to go back to TDOC?

[PETITIONER]: May I say something?

THE COURT: No, you've got a good lawyer, let him talk.

What do you want to say? Do you want him to say anything?

[COUNSEL]: I don't know what he wants to say, Your Honor, whether he wants to go back or not.

[PETITIONER]: I would rather stay here so I can get focus on this case. I don't know how–this is like taking months to deliberate. I don't understand the process that you're talking about.

THE COURT: Well, I've got to go back and reread all the transcripts, [Petitioner], and that's the problem. I've been just a little bit busy lately.

[PETITIONER]: I understand that.

THE COURT: But . . . I'm going to look at them as quick as I can get them and, you know, I'll put an order down. So let's put this out about 60 days and give me a target to work for but I need those transcripts ASAP.

The record reflects that, on April 24, 2024, Petitioner, acting pro se, filed a copy of the offer of proof transcript. On June 26, 2024, the post-conviction court entered a written order denying relief, stating, "The sole issue before this [c]ourt is whether or not [Petitioner's] trial counsel was ineffective (and/or whether a due process violation occurred) resulting from how the testimony of Junisha Garrett was made a part of the record." The post-conviction court found as follows:

Whether the alleged constitutional violation resulting from the omission of Junisha['s] testimony is couched in terms of ineffective assistan[ce] of counsel or a violation of due process is of no consequence. The issue has been previously determined, and most significantly, the Court of Criminal Appeals has[,] by its opinion on direct appeal, already held that [Petitioner] cannot establish prejudice.

. . . .

As the Court of Criminal Appeals held . . . . [t]he record clearly establishes that [Ms.] Garrett consented to the search which yielded the removal of the incriminating evidence which led to [Petitioner's] conviction(s). Moreover, after having reviewed Junisha's testimony this [c]ourt would hold that the evidence seized was properly admitted.

On July 26, 2024, post-conviction counsel filed a timely notice of appeal on Petitioner's behalf. On July 30, 2024, Petitioner filed a pro se notice of appeal and requested to proceed pro se. On August 7, 2024, this court entered an order noting that the "prison mailroom stamp indicates that the pro se notice of appeal was delivered to

authorities on July 25, 2024," and remanding the case for the post-conviction court to determine whether Petitioner's waiver of the right to counsel on appeal was knowing and intelligent. *See Lovin v. State*, 286 S.W.3d 275 (Tenn. 2009). On September 11, 2024, the post-conviction court filed an order allowing Petitioner to proceed with this appeal pro se.

In its appellate brief, the State argued as a preliminary matter that the post-conviction petition was filed after the one-year statute of limitations ran on July 18, 2019, and that the post-conviction court did not have jurisdiction to adjudicate the merits of the petition. On July 17, 2025, this court remanded the case to the post-conviction court to determine whether the petition was timely. The post-conviction court heard additional proof on September 5, 2025, and entered a written order finding that, although the petition was stamp-filed with the Knox County Criminal Court Clerk on July 22, 2019, the petition was delivered to the prison mailroom on July 16, 2018. Accordingly, the petition was timely filed. *See Adkins v. State*, No. E2020-01213-CCA-R3-PC, 2022 WL 122673, at *3 (Tenn. Crim. App. Jan. 13, 2022) (stating that "a petition prepared by an incarcerated pro se litigant is considered timely if it was delivered for mailing to the appropriate individual at the correctional facility within the time set for filing"), *perm. app. denied* (Tenn. Nov. 20, 2023); *see* Tenn. R. Sup. Ct. 28, § 2(G); Tenn. R. Crim. P. 49(d)(1).

## Analysis

On appeal, the first issue Petitioner raises is whether the trial court erred by denying his motion to suppress based upon Petitioner's having been on probation at the time of the search. His third issue, which contests the constitutionality of the search on multiple grounds, includes that Junisha's denial of consent should have discredited the police testimony regarding the scope and timing of the initial search.

Petitioner frames his second issue as, "Whether [t]rial counsel was ineffective for not ensuring the Offer-of-Proof transcripts were included in the record on direct appeal[.]" Although Petitioner's statement of the issue references trial counsel, the substance of his argument includes that the post-conviction court "misconstrued" his argument and that Petitioner "has clearly shown that his argument concerned the ineffective assistance of appellate counsel."

Finally, attached to a motion to amend his brief, Petitioner raised a fourth issue— that his due process rights were violated when he was not permitted to testify at the post-conviction hearing, call trial counsel as a witness, or "speak when he requested to do so." Petitioner also complains that "because his post-conviction attorney failed to obey the court's request to submit [the offer-of-proof] transcripts, the [post-conviction court]

refused to even consider the testimony therein." Petitioner avers that he "did not receive [a full and fair hearing] due to the plain error of the post-conviction court."[2]

The State asserts that Petitioner's first three issues have been waived or were previously determined; the State does not address Petitioner's fourth due process issue.

Post-conviction relief "shall be granted when the conviction or sentence is void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." Tenn. Code Ann. § 40-30-103. In order to prevail on a petition for post-conviction relief, a petitioner must prove all factual allegations by clear and convincing evidence. *Jaco v. State*, 120 S.W.3d 828, 830 (Tenn. 2003). Appellate courts are bound by the post-conviction court's factual findings unless the evidence preponderates against such findings. *Kendrick v. State*, 454 S.W.3d 450, 457 (Tenn. 2015). The post-conviction court's conclusions of law and application of the law to factual findings are reviewed de novo with no presumption of correctness. *Id*.

Generally, appellate review is not afforded to issues not addressed by the post-conviction court, and plain error review is not available in post-conviction proceedings. *Holland v. State*, 610 S.W.3d 450, 458 (Tenn. 2020). An appellate court "may only consider issues that were not formally raised in the post-conviction petition if the issue was argued at the post-conviction hearing and decided without objection." *Id*.

Upon review, we conclude that we are precluded from addressing Petitioner's ineffective assistance of appellate counsel claim because Petitioner did not raise the issue before the post-conviction court, and consequently, the post-conviction court did not consider appellate counsel's performance.[3]

Similarly, Petitioner has waived consideration of his issues relating to the merits of his motion to suppress by failing to raise them before the post-conviction court. *See id*. Moreover, the suppression issue is previously determined because "a court of competent jurisdiction has ruled on the merits after a full and fair hearing." Tenn. Code Ann. § 40-30-106(h). As set out above, Petitioner had the opportunity to fully litigate his motion to suppress and obtain a ruling on the merits in the trial court and on direct appeal. To the extent that Petitioner has raised new grounds for the suppression of evidence in these proceedings, the grounds are waived based upon his failure to present them for

---

[2] As the post-conviction court and post-conviction counsel discussed at the evidentiary hearing, Petitioner chose to present only two claims for the post-conviction court's consideration—whether trial counsel was ineffective for "not getting a specific ruling from the [c]ourt to consider [Junisha's] testimony" and whether the trial court's handling of the offer-of-proof hearing constituted a due process violation. We note that Petitioner has not raised either of these two issues on appeal.

[3] In any event, we note that appellate counsel did, in fact, include the transcript of Junisha's offer-of-proof testimony in the appellate record on direct appeal, despite Petitioner's claim to the contrary.

determination "in any proceeding before a court of competent jurisdiction in which the ground[s] could have been presented[.]" Tenn. Code Ann. § 40-30-106(g). Thus, Petitioner is not entitled to relief.

Relative to Petitioner's claim that he was denied due process because the post-conviction court did not allow him to testify or call trial counsel as a witness at the post-conviction hearing, our supreme court has stated that a "full and fair post-conviction hearing occurs when a petitioner is given the opportunity to present proof and argument on the grounds raised in the petition for post-conviction relief." *Dotson v. State*, 673 S.W.3d 204, 223 (Tenn. 2023) (citation omitted). This court has also recently discussed that "[t]o comply with due process, post-conviction petitioners must be afforded an opportunity to seek post-conviction relief 'at a meaningful time and in a meaningful manner.'" *Lowe v. State*, 703 S.W.3d 319, 331 (Tenn. Crim. App. 2024) (quoting *Burford v. State*, 845 S.W.2d 204, 208 (Tenn. 1992)).

Contrary to Petitioner's suggestion that the post-conviction court prevented Petitioner from testifying or calling witnesses, Petitioner had the opportunity to do both. Post-conviction counsel informed the post-conviction court that Petitioner had decided to narrow the scope of his petition and that no witnesses would be called. When Petitioner interjected at the end of the hearing, the post-conviction court initially instructed Petitioner to allow counsel to communicate for him but then gave Petitioner an opportunity to speak. Petitioner did not ask to testify or call witnesses but rather expressed frustration at the speed of the proceedings; he also asked to remain at the county jail while waiting for the post-conviction court's order. The record does not reflect that the post-conviction court prevented Petitioner from presenting his claims in his chosen manner, and he received a full and fair hearing.

We note that, contrary to Petitioner's assertion that the post-conviction court refused to consider Junisha's testimony, the court explicitly stated in its order denying relief that "*after having reviewed Junisha's testimony* [the c]ourt would hold that the evidence seized was properly admitted." (Emphasis added). Petitioner received the opportunity to seek relief at a meaningful time and in a meaningful manner, and he is not entitled to relief on this basis.

## Conclusion

Based upon the foregoing, we affirm the judgment of the post-conviction court.

s/ *Robert L. Holloway, Jr.*
ROBERT L. HOLLOWAY, JR., JUDGE

- 12 -